THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GERSHON TENDETNICK, Appellant.

First Department, December 9, 1932.

*Lewis Steinfeld*, for the appellant.

*Charles B. McLaughlin, District Attorney*, of counsel [*Sol Boneparth* and *Herman J. Fliederblum* with him on the brief], for the respondent.

MARTIN, J. The complainant charged the defendant with a violation of subdivision 1 of section 1533 of the Penal Law, in that the defendant committed the offense of maintaining a public nuisance at 1325 Croes avenue, Bronx. The charge is based upon the fact that the defendant knowingly suffered and permitted a club to be operated in his house in such a manner as to seriously interfere, at all hours of the night, with the comfort and repose of a considerable number of his neighbors.

The defendant lived on the first floor of the premises in question, a two-family house, in a built-up, residential section of the city. A tenant lived above him. The defendant had been the owner of the building for five years. On February 27, 1931, the defendant received a certificate from the bureau of buildings permitting him to have a clubroom in the basement of his building. Thereafter he rented the basement to a group of boys on condition that they could use it Saturday nights until twelve midnight and Sunday nights until eleven o'clock. The defendant received rent for such occupancy.

The young men who were members of the club gathered there at least three nights a week, Friday, Saturday and Sunday, and also on holidays. Upon occasions young ladies were invited to the premises where there was dancing to the music of a radio. Impromptu entertainments were held, the efforts of the entertainers being loudly applauded by those present in the club. The radio, dancing, tapping of feet, impromptu entertainment, loud applause and festivities continued until the early hours of the morning, sometimes as late as two or three o'clock, to the annoyance and discomfort of the whole neighborhood. Upon leaving the premises the young men and young women gathered in front thereof, talking and shouting to each other and acting in a boisterous manner.

The complainant called a police officer on the night of April 11, 1931, at about nine P. M. The officer testified that he found about fifteen couples dancing, a radio playing, singing, clapping of hands, music and loud noise. Later that night and between twelve-thirty and one A. M., the members of the complainant's family and other families in the neighborhood were awakened from their sleep by the disturbing noise and the complainant thereafter obtained a summons for this defendant.

There is testimony that the noises from the defendant's premises could be heard one hundred to one hundred and fifty feet away from the building; that families in which there were young children were awakened and disturbed by the noise and found it impossible to sleep. The police officer who was called said that the noise was heard at the curb of the building adjoining the defendant's

premises. There is testimony to show that the occurrence on the night of April eleventh and morning of April twelfth was not an isolated instance but a general condition which had existed for more than a year, every Friday, Saturday and Sunday evening.

In the house adjoining the defendant's premises, No. 1327 Croes avenue, separated by an eight-foot driveway, lives Mrs. Ida Perlman, her husband and three children and Mrs. Silverman and her three children. Across the street, almost directly opposite, at No. 1326 Croes avenue, Mrs. Epstein resides with her husband and three children. Several houses removed, at No. 1331 Croes avenue, Mrs. Ida Gilman resides with her husband and five children. Mrs. Kocin, her husband and three children reside at No. 1335 Croes avenue, about one hundred feet from defendant's premises. Mrs. Perlman, Mrs. Gilman, Mrs. Epstein, Mrs. Kocin and Mrs. Silverman were all witnesses at the trial.

The defendant produced the certificate of the building department permitting the basement of his premises to be occupied by a club and produced his son and daughter and three neighbors who testified that they were not disturbed by the noise.

Those who are familiar with a residential section such as here described will appreciate the nuisance a dance hall or club may become if conducted without restraint or in disregard of the rights of others.

Upon the issue as to the extent of the noise and its effect upon the neighbors the court found the defendant guilty of maintaining a nuisance. This court has frequently held that on such questions of fact, such a finding if not conclusive should carry great weight.

In *People* v. *Atlas* (183 App. Div. 595, 600) the court affirmed a judgment of the Court of Special Sessions convicting the defendant of violating section 435 of the Penal Law. Upon appeal the defendant challenged the sufficiency of the evidence and on that point the court said: " The rule is well settled that on the review of a conviction in a criminal case where there is any evidence of guilt, the question of reasonable doubt must be left to the jury or trial court, and the verdict or decision on the facts must ordinarily be deemed conclusive and will not be disturbed unless it is perfectly clear that it is against the weight of the evidence. (*People* v. *Long*, 150 App. Div. 500; *People* v. *Seidenshner*, 210 N. Y. 341; *People* v. *Katz*, 154 App. Div. 44; affd., 209 N. Y. 311; *People* v. *Rodawald*, 177 id. 409; *People* v. *Becker*, 215 id. 126.) The conduct of the defendant indicates that he was guilty, and I think the conviction should not be disturbed."

In *People* v. *Becker* (215 N. Y. 126, at p. 159) the court said: " It is not our duty to try the case over again upon the printed

record. We have not seen the witnesses. We are deprived of the aid furnished by their appearance, demeanor, facial expression and manner of testifying. These advantages the jury enjoyed; and there being sufficient evidence in quantity and quality to take the case to the jury, their verdict, in the absence of any of the statutory grounds for reversal, is conclusive even upon the Court of Appeals."

In addition to the evidence of those passing by the premises, the extent of the noise was shown by evidence which established that a number of families in the neighborhood, among the members of which were many small children, were constantly annoyed by the noises from the clubroom in question to such an extent that they could not obtain rest or sleep.

The defendant was warned that the manner in which he permitted the club to be operated seriously disturbed the peace, quiet, repose and comfort of the neighborhood within a considerable radius. He was absolutely indifferent and took no steps whatsoever of any kind to remedy the condition. In fact his answer to the complainant was that it was his property; that he could do anything he liked with it and that he was getting rent from the club and intended to get this income irrespective of the effect upon the neighbors.

The Penal Law (§ 1530) provides that a " ' public nuisance ' is a crime against the order and economy of the State, and consists in unlawfully doing an act, or omitting to perform a duty, which act or omission: 1. Annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons; * * *."

In *People* v. *Cooper* (200 App. Div. 413) the court said: " But a considerable number of persons does not necessarily mean a very great or any particular number of persons."

In *People* v. *Rubenfeld* (254 N. Y. 245) the court said: " Long ago it was adjudged that one dwelling in a city who with the aid of a speaking trumpet made great noises in the night time to the disturbance of the neighborhood, must answer to the King (*Rex* v. *Smith*, [1726] 2 Strange, 704). The precedent is not one to be hastily renounced in days when trumpets have a power unknown to a simpler age. * * *

" We think the area of this tumult, the range of its disturbing power, is wide enough to bring it within the category of an offense to the community, or so the triers of the facts might find. Here is something more than an interference with a single dwelling or even two or three. Here is tumult so great, if the witnesses are to be credited, as to be a plague to a whole neighborhood."

In *People* v. *Hess* (110 Misc. 76) the court said: " Noise alone, or noise accompanied by vibration, if it be of such character as

to be productive of actual physical discomfort and annoyance to a person of ordinary sensibility, may create a nuisance, though such noise and vibration may result from the carrying on of a trade or business in a town or city.  *  *  *  The difference between a public nuisance and a private nuisance does not consist in any difference in the nature and character of the thing itself, and the proceeding may be criminal in form when the nuisance affects a considerable number of persons.  *  *  *

" ' Of course, the character and volume of the noise and the time and duration of its occurrence, and the place where it occurs, and the surroundings thereof, are the important and determinative features.'

" The mere fact that the business conducted by the defendants is in itself lawful is not an excuse in law for the commission of a public nuisance.  2 Wharton Crim. Law (11th ed.), § 1767.  A lawful business may be conducted in an unlawful manner.  The lawful nature of the business is not a shield for unlawful acts committed in the conduct of that business."

The answer of the defendant that as owner of the property he would do as he pleased with it, emphasizes the fact that the conditions were known to him.  Under the circumstances here disclosed, such an answer to the numerous complaints shows an utter disregard for the rights of others.

The ever-increasing unavoidable noises which are a part of the every day life of a large city should not be augmented by those which are unnecessary and which are harmful to the health and comfort of many of our citizens.  Efforts are constantly being made to stop some of the unnecessary noises.  This conviction may be a step in the right direction.

The defendant was properly convicted and the judgment should be affirmed.

O'MALLEY and TOWNLEY, JJ., concur; McAVOY, J., taking no part; FINCH, P. J., dissents and votes for reversal.

FINCH, P. J. (dissenting).  This defendant has been held guilty of the criminal offense of permitting a public nuisance because he legally let the basement of his two-family house to a club of young people for dancing to radio music two or three times a week.  The next-door neighbor and the man across the street have been annoyed, but the comfort, repose, health or safety of more of the public must be involved before it can be held that a public nuisance has been created as distinguished from private redress for those immediately affected.

The defendant has been convicted of knowingly permitting a club

to be operated in his house in such manner as to constitute a public nuisance in violation of section 1533 of the Penal Law, which reads as follows: " Permitting use of building for nuisance  *  *  *;

" A person who: 1. Lets, or permits to be used, a building, or portion of a building, knowing that it is intended to be used for committing or maintaining a public nuisance;  *  *  *  Is guilty of a misdemeanor."

It appears that the complaint was made against the defendant by a next-door neighbor who had a grudge against the defendant. The defendant resided in a two-family house. He rented the basement to a club of young people, who would assemble there two or three times a week, at which time there was dancing to radio music and noise that might be expected from a gathering of young folks. The defendant had received a permit for the use of the premises for club purposes, so that there is nothing inherently unlawful in the use of the premises. It is simply the manner of such use that is claimed to be objectionable.

The facts adduced by the People failed to show that the club was so operated as to constitute a public nuisance. The testimony shows that only the occupants of the adjoining premises and the premises immediately opposite were annoyed by the noise of the members of the club and that much of the annoyance, if not the greater part thereof, took place after the members left the club premises and consisted of their loud talking and calling to each other while outside the premises. While there was testimony that the noise could be heard a half block away, the same witnesses so testifying admitted that the noise could not be heard while they were within their dwellings but could only be heard from the street. It thus appearing that the noise could not be heard within dwellings save only the house next door and perhaps across the street, it cannot be said that the repose or health of a considerable number of people was affected. Hence a case was not made out as a matter of law. The only basis for claiming this noise constituted a public nuisance is that it interfered with the repose and sleep of the community. The acts complained of might well constitute a private nuisance to the immediate neighbors directly affected thereby, but that it is not of such a character as to constitute a public nuisance, which is defined as an act that annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons.

The case would seem to fall within the authority of *People* v. *Cooper* (200 App. Div. 413), in which it was said: " That the noise and vibration caused by the machinery and the odor, said to be offensive, of the soap and other materials used in washing, annoyed

the witnesses living next door may be conceded. This might be ground for a private action for injunctive relief, but I doubt whether the acts complained of measure up to an act which ' annoys, injures or endangers the comfort, repose, health or safety of any considerable number of persons.' ''

The judgment should be reversed and the defendant acquitted as a matter of law.

Judgment affirmed.