Peter BURMEISTER, Ronald Johnson and James Hutchinson, for themselves and all others similarly situated, plaintiffs,

v.

The NEW YORK CITY POLICE DEPARTMENT and Howard R. Leary, individually and as Police Commissioner of the City of New York, Defendants.

No. 67 Civ. 2149.

United States District Court
S. D. New York.

Aug. 29, 1967.

Paul G. Chevigny, New York City, for plaintiff.

Louis Lefkowitz, Atty. Gen. of New York, J. Lee Rankin, Corp. Counsel of City of New York, Joel Lewittes, John J. Loflin, Jr., Milton M. Stein, New York City, of counsel, for defendants.

## OPINION

TENNEY, District Judge.

The complaint herein alleges unlawful invasion of the premises of certain of the plaintiffs, together with unlawful arrests under a "nuisance" statute, § 1533 of the New York Penal Law, McKinney's Consol.Laws, c. 40, which plaintiffs assert is unconstitutional. The jurisdiction of this Court is invoked under Title 28 U.S.C. §§ 1343 and 2201 et seq., suit being authorized by Title 42 U.S.C. § 1983. This is an action for a declaratory judgment and an injunction to prevent the further alleged deprivation, under color of said state statute, of rights, privileges and immunities secured by the Constitution of the United States, to wit, the fourth amendment to said Constitution, as made applicable to the states by the fourteenth amendment and the due process and equal protection clauses of the fourteenth amendment. Since injunctive relief is sought against enforcement of the aforementioned state statute on the grounds of its unconstitutionality, plaintiffs request the convention of a three-judge district court as required by Title 28 U.S.C. § 2281 to hear and determine the issues herein.

The present motion, brought on by order to show cause, is for the designation of a three-judge district court and for an order temporarily restraining defendants during the pendency of this litigation.

■ The complaint challenges Section 1533 as unconstitutional on its face on the ground of vagueness and contends that said statute is unconstitutional as applied. It also alleges that the statute is being used unconstitutionally, that is, abused by prosecutorial action designed and effected to destroy Federal rights, and that unlawful entries and searches are being carried out. These last assertions, standing alone, would not require a three-judge court. However, if the injunctive relief demanded raises a substantial Federal question, plaintiffs as-

sert that it is proper for the three-judge court to determine all of the issues, citing as authority Paul v. United States, 371 U.S. 245, 249–250, 83 S.Ct. 426, 9 L.Ed.2d 292 (1963) and Florida Lime & Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960). Whether the cited cases would constitute authority for a determination by the three-judge court of an action brought under Title 42 U.S.C. § 1983, in which action the constitutionality of a statute is not necessarily in issue, seems doubtful. However, for the reasons hereinafter set forth, it is not necessary to reach this point.

■ There are two essential requirements for convening a three-judge district court to enjoin the enforcement of a state statute. Not only must the constitutional question raised be a substantial one, but the complaint must also set forth a basis or bases for invoking the traditional equity jurisdiction of the Federal courts. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962) (per curiam); Note, The Three-Judge District Court: Scope and Procedure under Section 2281, 77 Harv.L.Rev. 299, 309, 317 (1963).

As stated by Judge Friendly in Utica Mut. Ins. Co. v. Vincent, 375 F.2d 129, 131 (2d Cir. 1967):

"When a complaint for an injunction makes a claim of unconstitutionality which on its face would require a court of three judges under 28 U.S.C. § 2281 or 2282, the single district judge should consider whether the claim is substantial and, if he finds it is not, refuse to convoke a court of three judges and dismiss the action. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933); California Water Service Co. v. City of Redding, 304 U.S. 252, 254–255, 58 S.Ct. 865, 82 L.Ed. 1323 (1938); Wicks v. Southern Pacific Co., 231 F. 2d 130 (9 Cir.), cert. denied [Wicks v. Brotherhood of Maintenance], 351 U.S. 946, 76 S.Ct. 845, 100 L.Ed. 1471 (1956); White v. Gates, 102 U.S.App.

D.C. 346, 253 F.2d 868, cert. denied, 356 U.S. 973, 78 S.Ct. 1136, 2 L.Ed. 2d 1147 (1958); Carrigan v. Sunland-Tujunga Telephone Co., 263 F.2d 568 (9 Cir.) cert. denied, 359 U.S. 975, 79 S.Ct. 893, 3 L.Ed.2d 841 (1959); Bell v. Waterfront Comm., 279 F.2d 853, 857–858 (2 Cir. 1960); Powell v. Workmen's Compensation Board, 327 F.2d 131, 138 (2 Cir. 1964). This is not merely a power confided to the single district judge but an important responsibility, since the requirement of three judges 'entails a serious drain upon the federal judicial system particularly in regions where, despite modern facilities, distance still plays an important part in the effective administration of justice,' Phillips v. United States, 312 U.S. 246, 250, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941), a burden not only on the inferior courts but, if the three judges retain the case, upon the Supreme Court by virtue of the provision for direct appeal, 28 U.S.C. § 1253." (Footnotes omitted.)

■ Also, the district judge may consider whether plaintiffs have demonstrated any irreparable damage to themselves or any likelihood thereof (Linehan v. Waterfront Comm'n, 116 F.Supp. 401, 405 (S.D.N.Y.1953)) since an injunction against state prosecution under a state statute alleged to be unconstitutional will only be granted "to prevent irreparable injury which is clear and imminent". Douglas v. City of Jeannette, 319 U.S. 157, 163, 63 S.Ct. 877, 881, 87 L.Ed. 1324 (1943). The district judge may also dismiss the injunction action directed against the statute for failure to pursue available adequate remedies under state law. Davis v. State of Maryland, 248 F.Supp. 951 (D.Md.1965); Rosso v. Commonwealth of Puerto Rico, 226 F.Supp. 688 (D.P.R.1964).

I will first consider the claims of unconstitutionality directed to the statute itself. Section 1533 of the Penal Law, insofar as it is attacked herein, provides:

A person who:
* * *

2. Opens or maintains a place where any narcotic drug is unlawfully used; or,

* * *

4. Visits or resorts to any such place for the purpose of unlawfully using any narcotic drug; or,

5. Uses, resorts to or loiters about any stairway, staircase, hall, roof, elevator, cellar, courtyard or any passageway of a building for the purpose of unlawfully using or possessing any narcotic drug,

Is guilty of a misdemeanor.

■ There appear to be few decisions by the New York courts construing the statute, and such decisions relate only to the lessee or owner of the premises. These decisions establish that existence of narcotics on the premises does not by itself establish a violation on the part of the occupant (People v. Reed, 46 App. Div. 625, 61 N.Y.S. 520 (2d Dep't 1899); Barrett v. Fook, 129 N.Y.S. 23 (App. Term 1911)), and that knowledge on the part of the occupant of the use of narcotics does not establish that he "maintains" the place within the meaning of § 1533 (2). People v. Campbell, 45 Misc.2d 201, 256 N.Y.S.2d 467 (N.Y.C.Crim.Ct.1965). But see People v. Tendetnick, 237 App. Div. 9, 260 N.Y.S. 777 (1st Dep't 1932). Although characterized by plaintiffs as a "loitering" statute, it is in effect a "nuiance" statute. Prior to amendment in 1960 the statute was directed primarily against opium smoking; however, the maintenance of premises for the sale and distribution of heroin, morphine, cocaine and other dangerous drugs had been held to constitute a public nuisance as a health hazard under Section 1530 of the Penal Law. People v. Kingston, 177 App.Div. 376, 164 N.Y.S. 181 (4th Dep't 1917). A state has constitutional power to declare that any place kept and maintained for an illegal purpose shall be deemed a common nuisance and criminal sanctions can be imposed upon anybody keeping or maintaining such nuisance. Pierce Oil Corp. v. City of Hope, 248 U.S. 498, 499,

39 S.Ct. 172, 63 L.Ed. 381 (1919); Mugler v. State of Kansas, 123 U.S. 623, 671, 8 S.Ct. 273, 31 L.Ed. 205 (1887). Such a classification as a public nuisance is not an arbitrary or unreasonable attempt to exercise the authority vested in the state in the public interest. "The broad power of a State to regulate the narcotic drugs traffic within its borders" is beyond question. Robinson v. State of California, 370 U.S. 660, 664, 82 S.Ct. 1417, 1419, 8 L.Ed.2d 758 (1962). The fact that there are statutes imposing more drastic penalties for the use, sale, or possession of narcotics does not bar the state from enacting legislation imposing lesser penalties for maintaining or frequenting premises where such illegal activity is conducted. Nor is the statute constitutionally vague merely because plaintiffs so assert. The state courts have held that the presence of narcotics on the premises or knowledge by the occupant that narcotics are used thereon is not alone sufficient to sustain a conviction. People v. Reed, supra; Barrett v. Fook, supra; People v. Campbell, supra. The construction given by the state courts is binding upon the Federal courts. Albertson v. Millard, 345 U.S. 242, 244, 73 S.Ct. 600, 97 L.Ed. 983 (1953). The state interpretation is as though written into the statute itself. Poulos v. State of New Hampshire, 345 U.S. 395, 402, 73 S.Ct. 760, 97 L.Ed. 1105 (1953); Winters v. People of State of New York, 333 U.S. 507, 514, 68 S.Ct. 665, 92 L.Ed. 840 (1948).

■ Plaintiffs, indeed, concede that subsection 5 of § 1533, relating to loitering for the purpose of using narcotics "has been very artfully drafted so as to convey the appearance of validity under existing state precedents." Mem. for Plaintiff, p. 9. The acts condemned by the statute are acts engaged in for an unlawful purpose, the statute applies equally to all those so engaged, and accordingly does not offend constitutional guarantees. Finally, plaintiffs nowhere allege a violation of their first amendment rights or that the statute abridges free expression or that it has been applied for such purposes.

Furthermore, plaintiffs have failed to pursue available adequate remedies under state law. It is well-established that an action for a declaratory judgment (N.Y.CPLR § 3001) is an available and adequate remedy to test the constitutionality of a New York criminal statute under which prosecution is threatened. DeVeau v. Braisted, 5 App. Div.2d 603, 174 N.Y.S.2d 596 (2d Dep't 1958), aff'd 5 N.Y.2d 236, 157 N.E.2d 165, 183 N.Y.S.2d 793 (1959), aff'd 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960). Plaintiffs allege that since "the Court of Appeals has not defined the standards of vagueness in accordance with prevailing standards * * * § 1533 would undoubtedly survive state-court adjudication by a declaratory judgment, even though the statute is void." Mem. for Plaintiff, p. 10. The suggestion that in a declaratory judgment proceeding the courts of New York would be less enlightened than the Federal courts is without merit. Fenster v. Leary, 264 F. Supp. 153, 158 (S.D.N.Y.1966), aff'd per curiam 386 U.S. 10, 87 S.Ct. 862, 17 L. Ed.2d 701 (1967). Compare id., with Fenster v. Leary, July 10, 1967, 20 N.Y. 2d 309, 282 N.Y.S.2d 739, 229 N.E.2d 426.

I conclude that plaintiffs have failed to raise a substantial Federal question and, further, that they have failed to pursue adequate and available remedies under state law. Accordingly, so much of their complaint as seeks a declaratory judgment, an injunction against enforcement of the statute and convention of a three-judge district court is dismissed.

Different considerations, however, must apply with respect to plaintiffs' claims under Title 42 U.S.C. § 1983, for violation of which they seek injunctive relief, including an order temporarily restraining defendants during the pendency of this litigation. Section 1983 provides that:

"Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Initially, it must be noted that the constitutionality of the "statute" (such as § 1533) under "color" of which the prohibited action is taken, is not a material issue, since the constitutionality of the statute is no defense to improper action taken under color of that statute. Thomas v. Chamberlain, 143 F.Supp. 671, 674 (E.D.Tenn.1955), aff'd per curiam 236 F.2d 417 (6th Cir. 1956).

Also, the aggrieved party is not required to exhaust his state remedies before seeking Federal relief. Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Screws v. United States, 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). However, § 1983 should be so construed as to respect the proper balance between the states and the Federal government in law enforcement. Stefanelli v. Minard, 342 U.S. 117, 72 S. Ct. 118, 96 L.Ed. 138 (1951); Hall v. State of New York, 359 F.2d 26, 28 (2d Cir.) (per curiam), cert. denied 385 U.S. 879, 87 S.Ct. 161, 17 L.Ed.2d 106 (1966); Pugach v. Sullivan, 180 F.Supp. 66 (S.D. N.Y.), aff'd sub nom. Pugach v. Dollinger, 277 F.2d 739 (2d Cir. 1960), aff'd per curiam 365 U.S. 458, 81 S.Ct. 650, 5 L. Ed.2d 678 (1961). Accordingly, the equitable injunctive power of the Federal court will not be exercised save in exceptional cases "to prevent irreparable injury which is clear and imminent". Douglas v. City of Jeannette, supra, 319 U.S. at 163, 63 S.Ct. at 881.

Finally, the Police Department is not a "person" within the meaning of Section 1983, and therefore the complaint as against it must be dismissed. Monroe v. Pape, supra.

Plaintiffs, in their complaint, and in an affidavit by their counsel submitted in support of the instant motion, allege

three incidents in which one or more of plaintiffs were directly involved and two incidents not involving plaintiffs. Defendant Police Commissioner has submitted an affidavit with respect to each of the abovementioned incidents.

(a) Plaintiff Burmeister alleges that on March 7, 1967, while walking with friends in the early afternoon, he was stopped by police officers, summarily arrested without probable cause, searched, and detained at the precinct house for nearly five hours, together with fourteen others arrested in the same neighborhood and taken to court "under color of a violation of Section 1533", where the charges were dropped and all fifteen released. (Complt. ¶ 7.) Defendant Police Commissioner admits such arrests, stating that "a detective who saw these persons congregating together around street corners, walking about together, entering hallways, knew some of these persons and believed them to be narcotics addicts." (Leary affidavit ¶ 4(c).)

(b) Plaintiff Hutchinson alleges that on May 19, 1967, at about 6:30 P.M., police officers entered his residence, Apt. 11 at 622 East 11th Street, without a warrant, although plaintiff demanded one; that handbags and suitcases were searched, and plaintiff Hutchinson was arrested with others "under color of Section 1533", the charges being dismissed in court the following morning. No specific allegation is made of lack of probable cause. (Complt. ¶ 8.) Defendant Police Commissioner admits such arrests in Apartment 11. He further states that the police officers had search warrants for Apartments 12 and 16 of that building which had been obtained because sales of illegal drugs to police undercover agents had occurred in these apartments. In the course of their search, the police officers found a 14-year old girl who admitted that she had taken drugs in Apartments 11 and 12 of that building. Accordingly, they arrested the persons in Apartment 11, including plaintiff Hutchinson, for congregating together to illegally use drugs, and caused a search to be made of the premises. In this case the charges were dismissed because the 14-year old girl refused to identify the persons who had taken drugs with her in the apartment (Leary affidavit ¶ 4(b).)

(c) Plaintiffs Johnson and Hutchinson allege that on May 6, 1967, police officers forced their way into Apartment 11, arrested some 15 people, including plaintiff Johnson, without probable cause, and took them to the precinct house where all were released "many hours later" without charges being made and without being taken to court. (Complt. ¶ 9.) Defendant Police Commissioner replies that Apartment 11 has been entered by police officers on numerous occasions because of repeated requests to do so by other police departments and, most often, by parents of minors or runaway teenagers where such parents have learned from area residents or through letters written by their children that they are living in said apartment. When such a complaint is received, a police officer will accompany the parent to the apartment. The purpose of the police officer's presence is to avoid a violent confrontation between parents and occupants of Apartment 11. It is contended that the apartment door is open, contains a "welcome" sign, and that a knock on the door is greeted with a response to enter. Runaway minors have been frequently found in the apartment.

The Commissioner states that on May 6, 1967, the date of the alleged Johnson-Hutchinson incident, the occupants of Apartment 11 were requested by police to come to the local precinct house so that it could be determined if any of such occupants was the subject of a "missing persons" alarm or a crime. It is contended that this was done as a result of the police experience in locating runaway minors at the apartment. The Commissioner states that all of the occupants "cooperatively agreed" to visit the police station and that five teenagers were re-

turned to their parents and the others were allowed to leave. He further states that Apartment 11 is not visited by police at the present time unless a specific complaint is lodged by a parent having cause to believe that his child is there. When such visits occur, no entry is made without permission of the occupants. (Leary affidavit ¶ 4(a).)

Two further incidents are alleged, not in the complaint but in the affidavit of plaintiffs' counsel submitted in support of the instant motion.

(d) It is alleged that on November 6, 1966, police officers "burst in upon a social gathering" at 251 West 92nd Street without a warrant or "lawful cause" and searched the premises after which 87 persons were arrested, one being charged with possession of contraband and the remainder with violations of § 1533. After detention for some fifteen hours, charges against all these persons were dismissed. (Chevigny affidavit ¶ 5.)

The defendant Police Commissioner replies that, on the night in question, police officers were dispatched to the West 92nd Street address after receiving a complaint from the mother of a girl who had attended a party at the apartment. It was apparent that the girl was under the influence of drugs. When police arrived, the party was boisterous and persons were arrested for disorderly conduct and on drug charges. (Leary affidavit ¶ 4(d).)

(e) It is alleged that on February 12, 1967, Myrna Cherniak and her escort, Charles Drake, were about to attend a party in Apartment 9A, 127 West 82nd Street, New York City, and that as they approached the door of the apartment plainclothes police officers forced their way into the apartment with them without a warrant or lawful cause, searched the apartment and the occupants and arrested 25 persons, 20 of whom, including the above-mentioned couple, were charged with violations of § 1533, which charges were dismissed by the court after a detention of some twelve hours. (Chevigny affidavit ¶ 6.)

The defendant Police Commissioner replies that police had received information from a neighborhood television station of a party to be held at the West 82nd Street address, which address was known to be "a center of narcotics activity." Two detectives waited in the hallway of the building until two persons approached the apartment (apparently Cherniak and Drake). When the door was opened, the detectives approached, identified themselves, entered the apartment and found marijuana cigarettes "openly scattered and available * * * throughout the apartment." (Leary affidavit ¶ 4(e).)

Plaintiffs, in their complaint, and in the supporting affidavit of counsel, also make general charges that § 1533 "is one of the chief instruments of a campaign continuing up to and including the present, of harassment, including dragnet arrests, invasions of privacy and searches undertaken by the defendants" (Complt. ¶ 11); that defendants "are engaged in an intensive search for violations of the narcotics laws and for runaway minors" in the course of which the acts complained of were committed (id. at ¶ 12); and that defendants know, in making arrests under § 1533 that the charges will be dismissed (ibid.). Repeated visits of police officers to Apartment 11 at 622 East 11th Street (admitted by defendant Police Commissioner) and the arrest of plaintiff Johnson for impairing the morals of a minor (N.Y.Penal Law, § 483) are also detailed in counsel's affidavit. (Chevigny affidavit ¶ 8.) Defendant Police Commissioner denies that any policy or practice exists in the Police Department of arbitrarily searching persons or premises, or of deliberately harassing any individuals, or that there is any intention to unlawfully arrest or search plaintiffs or anyone else, and that "with respect to situations such as described in this case, it is the policy of the Police Department to make arrests only

on the basis of specific and knowledgeable complaints." (Leary affidavit ¶ 5.)

▮ It should be observed that in no instance cited herein have plaintiffs, although arrested, been found guilty of a violation of Section 1533, nor is there evidence that any of them presently face prosecution under that statute. Such evidence as has been presented fails to show a denial of equal protection to any person because of his race or color. The question is whether plaintiffs' fourth amendment rights have been violated or violation threatened by the action of defendants. Plaintiffs nowhere assert the lawful purpose for which they were assembled when arrested nor have they submitted affidavits to refute the statements made in the affidavit of defendant Police Commissioner. Indeed, the only affidavit submitted is that of plaintiffs' counsel. While plaintiffs may be entitled to their day in court on the issue of the reasonableness of the police action involved herein, the evidence presently before this Court on the application for a preliminary injunction clearly does not show such a lack of probable cause in effecting the arrests complained of, or such a threat of clear and imminent irreparable injury to plaintiffs as should warrant the invocation of the equitable injunctive power of this Court at this stage of the proceedings.

Accordingly, plaintiffs' motion for the convention of a three-judge district court and for a declaratory judgment and preliminary injunction against the enforcement of § 1533 is in all respects denied, and that portion of the complaint seeking such relief is dismissed. The motion for a preliminary injunction to restrain the defendant Police Commissioner under Title 42 U.S.C. § 1983 is denied. Insofar as the action is brought under said section against the New York City Police Department, it is dismissed.

It is so ordered.