Anthony B. SUROWITZ, Plaintiff,

v.

The **NEW YORK CITY EMPLOYEES' RETIREMENT SYSTEM**, and Arthur Van Houten, Executive Director, the New York City Employees' Retirement System, Defendants.

No. 73 Civ. 4430 (MP).

United States District Court,
S. D. New York.

May 9, 1974.

Samuel Resnicoff, New York City, for plaintiff.

Adrian P. Burke, Corp. Counsel for City of New York, New York City, by A. Michael Weber, Asst. Corp. Counsel, New York City.

POLLACK, District Judge.

Speaking of judicial review of administrative action, Mr. Justice Brandeis once said: "The supremacy of law demands that there shall be an opportunity to have *some* court decide whether an erroneous rule of law was applied and whether the proceeding in which facts were adjudicated was conducted regularly." St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 84, 56 S.Ct. 720, 740, 80 L.Ed. 1033 (1936) (concurring opinion) (emphasis added). In this case, plaintiff seeks to compel *this* Court to undertake such a review of state administrative actions rather than resort to the state courts of New York for relief. He hopes to accomplish this by a ritualistic invocation of 42 U.S.C. § 1983. This he may not do, for the reasons which follow.

I.

Plaintiff, a retired municipal correction officer, sues for "a writ of mandamus; preliminary injunction; permanent injunction, and for a declaratory judgment" against the defendants, the New York City Employees' Retirement System (NYCERS) and its Executive Director. Jurisdiction is alleged to exist by virtue of 28 U.S.C. §§ 1331, 1343(3), (4), 2201, 2202; 42 U.S.C. §§ 1981, 1983; Rule 57, Fed.R.Civ.P.; and the Fifth and Fourteenth Amendments to the Constitution. Although no money damages in a sum certain are expressly demanded by the complaint, that plead-

ing does request the Court to "[i]ssue a writ of mandamus directing defendants to retire plaintiff on a service-connected disability pension retroactive to December 12, 1969, and to pay plaintiff back pension on the basis of a service-connected retirement with interest from December 12, 1969." Moreover, plaintiff's counsel has indicated, on a civil designation form filed in this Court, that $50,000.00 is the amount sought to be recovered herein, presumably from the members of the NYCERS and its executive director (upon whom no service of process has been effected or attempted) in their official and not individual capacities.

Although plaintiff patently attempts to clothe his monetary claim in the guise of an equitable action for declaratory and injunctive relief, cf. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L. Ed.2d 662 (1974) (42 U.S.L.W. 4419); compare Scheuer v. Rhodes, —— U.S. ——, ——, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (42 U.S.L.W. 4543), this Court need not reach the effect of that problem since in no event does plaintiff state a claim upon which relief could be granted, as appears hereafter.

## II.

Plaintiff names the NYCERS as a defendant herein. Under local law, the NYCERS has the powers and privileges of a corporation and transacts all its business in its name. New York, N. Y.Admin.Code § B3–10.0 (1971). Assuming that to be sufficient to render the NYCERS *sui juris* as such (*cf.* Balash v. New York City Employees' Retirement System, 34 N.Y.2d 654, 355 N.Y.S.2d 577, 311 N.E.2d 649 (1974) (mem.) (*by implication*); Hessel v. New York City Employees' Retirement System, 33 N.Y.2d 381, 353 N.Y.S.2d 169, 308 N.E.2d 688 (1974) (*by implica-*

*tion*)), it does not serve to constitute that body a "person" within the meaning of § 1983. Blanton v. State University of New York, 489 F.2d 377, 382 (2d Cir. 1973) (State University not a "person"); Davis v. United States, 439 F.2d 1118, 1119 (8th Cir. 1971) (St. Louis Dep't of Public Welfare not a "person"); Sellers v. Regents of University of California, 432 F.2d 493, 500 (9th Cir. 1970), cert. denied, 401 U.S. 981, 91 S.Ct. 1194, 28 L.Ed.2d 333 (1971) (Regents of State University [a corporate body] not a "person"); Olson v. California Adult Authority, 423 F.2d 1326 (9th Cir.) (*per curiam*), cert. denied, 398 U. S. 914, 90 S.Ct. 1717, 26 L.Ed.2d 78 (1970) (California Adult Authority not a "person"); Zuckerman v. Appellate Dvision, Second Department, Supreme Court of the State of New York, 421 F. 2d 625, 626 (2d Cir. 1970) (State Court not a "person");[1] Clark v. Washington, 366 F.2d 678, 681 (9th Cir. 1966) (State Bar Association not a "person"); Sams v. New York State Board of Parole, 352 F.Supp. 296, 299 (S.D.N.Y.1972) (Parole Board not a "person"); Webb v. Lake Mills Community School Dist., 344 F.Supp. 791, 807 (N.D.Iowa 1972) (School District not a "person"); Wood v. Mt. Lebanon Township School Dist., 342 F.Supp. 1293, 1294 (W.D.Pa.1972) (same); Paige v. Pennsylvania Board of Parole, 311 F.Supp. 940, 941 (E.D. Pa.1970) (State Parole Board not a "person"); O'Reilly v. Wyman, 305 F. Supp. 228, 229 (S.D.N.Y.1969) (Department of Social Services not a "person"); Simmons v. Maslynsky, 45 F.R.D. 127, 130 (E.D.Pa.1968) (Parole Board not a "person"); Burmeister v. New York City Police Department, 275 F.Supp. 690, 695 · (S.D.N.Y.1967) (New York Police Department not a "person"); Hirych v. State, 376 Mich. 384, 136 N.W.2d 910, 914 (1965) (State Fair Authority not a "person"). *See generally* City of Keno-

---

1. Compare Tang v. Appellate Division of the New York Supreme Court, First Department, 487 F.2d 138 (2d Cir. 1973), cert. denied —— U.S. ——, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974) (42 U.S.L.W. 3555) (*by implication*), where three individual justices were named as defendants in addition to the Court itself.

sha v. Bruno, 412 U.S. 507, 513, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973) (A city is not a "person" under 42 U.S.C. § 1983 where equitable relief is sought); *accord,* Monroe v. Pape, 365 U.S. 167, 187, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) (same, where damages are sought).

■■ Accordingly, as the NYCERS is not a "person" within the meaning of § 1983, its presence as a defendant herein does not suffice to create federal jurisdiction. City of Kenosha v. Bruno, *supra,* at 513. The existence of federal jurisdiction predicated on § 1983 must depend on the presence of some defendant who *is* a "person." *Id.* Plaintiff in his complaint has named the executive director of NYCERS, one VanHouten, as a co-defendant herein. Overlooking for the moment the fact that he is not named in his individual capacity, his presence in the title of the suit does not avail the plaintiff since no service upon him has been either effected or attempted. Thus, he is not as yet before the Court in any legal manner. Fed.R.Civ. P. 4; *see* Jaynes v. Jaynes, 496 F.2d 9, 10 (2d Cir. 1974) *(per curiam).*

### III.

The jurisdiction point on which plaintiff must fail in this suit is apparent on the face of his complaint. Plaintiff seeks to state a claim for relief in these terms:

Plaintiff was denied a speedy disposition of his claim and cause of action. The ruthless delay in adjudicating his claim was invidious, intentional and discriminatory. The defendants and their representatives intentionally and purposefully discriminated against plaintiff and have successfully deprived him of a substantial property right without due process of law. Defendants by their actions have denied plaintiff . . . equal protection of the law and due process. (Complaint, ¶ 18).

The effect of the Appellate Division in granting defendants thirty (30) ad-ditional days after a "do-nothing" for approximately three (3) years, was to grant defendants preferential treatment. Defendants were not entitled under the law to special consideration. The firm principle of "equal justice under law" was violated. (*Id.* ¶ 19).

The denial of plaintiff's claims by defendants on August 24, 1973, would now require plaintiff to initiate new proceedings to review said determination. This violates every concept of due process and fair play. Such a burden is intolerable, unduly oppressive and denies plaintiff the fundamental basics of due process and a speedy trial. (Id. ¶ 20).

To better understand the significance of this vituperative statement, a brief recital of the facts alleged on the subject matter is required.

Plaintiff, as previously mentioned, is a former Correction Officer, having been employed by the Department of Corrections of the City of New York. After plaintiff was discovered to have active pulmonary tuberculosis, the defendant retired him at one-half pay following numerous examinations and administrative proceedings at which he was represented by counsel. The defendant made a finding that plaintiff's disability was not service connected—a finding that plaintiff vigorously disputes. Were his disability to be found to be service connected, his retirement pay would be at a higher level.

Plaintiff thereupon instituted state judicial proceedings pursuant to Article 78, N.Y.C.P.L.R. to review and annul the defendant's finding or to afford a variety of alternative relief. The petition was granted to the extent that the matter was remanded to the defendant for further proceedings not inconsistent with the state court's determination. Apparently, the further proceedings were not timely held and defendant was held in contempt of the state court. However, the contempt order was in time reversed by the Appellate Division,

which again remanded the matter to the defendant for further proceedings. On rehearing, defendant once again retired plaintiff for ordinary disability at the rate provided therefor by law.

At this point plaintiff again had available to him his Article 78 remedy —a procedural device which he had already utilized successfully. In fact, at every stage of the state judicial proceedings, plaintiff had prevailed on the merits. His displeasure with the state courts is apparently occasioned by the procedure employed by them to remand the matter to the agency involved for further proceedings before it rather than to award judgment to plaintiff on the merits.

Aware of the relatively short period of limitation made applicable to Article 78 proceedings by CPLR § 217, plaintiff chose not to avail himself thereof and elected to allow the time for commencement of an Article 78 proceeding to run out.[2] Instead, plaintiff decided to forsake the state courts and to seek to have this Court declare his rights to a service connected disability pension.

The question presented is simply, whether the complaint states a claim upon which relief could be granted. The answer is that it does not. *See generally* Bell v. Hood, 327 U.S. 678, 681–682, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

■■■ It has been held that no violation of § 1983 is made out so long as a procedurally fair trial on a civil issue is provided in the state court. Bottone v. Lindsley, 170 F.2d 705 (10th Cir. 1948), cert. denied, 336 U.S. 944, 69 S.Ct. 810, 93 L.Ed. 1101 (1949). Likewise, a mere irregularity in state court proceedings does not confer § 1983 jurisdiction.

Hurlburt v. Graham, 323 F.2d 723, 725 (6th Cir. 1963).

■■■ An action predicated upon § 1983 does not lie where no nexus exists between the facts alleged and the deprivation of constitutionally protected rights claimed. Asher v. Harrington, 318 F.Supp. 82, 84 (E.D.Wis.1970), aff'd, 461 F.2d 890 (7th Cir. 1972). Plaintiff does not attack any state statute or regulation, either on its face or in its operation. Instead, he merely contends that the state judicial processes— by hypothesis constitutional in themselves—have worked a deprivation of due process upon him, which he attributes to their "sloth" (his characterization). The logical defect is obvious— the delay, if any, was on the part of the New York Courts (or, more likely, plaintiff's own counsel)[3] and NYCERS and its executive director were themselves equally the "victims" of the maxim that justice delayed is justice denied. Plaintiff would be the only one prejudiced by the delay only if one were to accept his hypothesis that he will ultimately necessarily prevail on the merits.

In Taylor v. New York City Transit Authority, 309 F.Supp. 785 (E.D.N.Y.), aff'd, 433 F.2d 665 (2d Cir. 1970), plaintiff suffered an adverse administrative determination before the Civil Service Commission of the City of New York. Thereafter, he sought review thereof in the New York Supreme Court under Article 78 of the NYCPLR. The state Supreme Court dismissed the petition and the Appellate Division affirmed, as did the New York Court of Appeals. Review in the United States Supreme Court was not sought; instead, an action for declaratory and injunctive relief predicated on 42 U.S.C. § 1983 and

---

2. Counsel has expressed his belief that an Article 78 proceeding—which he believes is now time barred (*But see* N.Y.C.P.L.R. § 205(a))—would be his only state remedy. A different result is suggested by Lutheran Church in America v. City of New York, 27 A.D.2d 237, 278 N.Y.S.2d 1 (1st Dep't

1967); *accord*, Romer v. Leary, 425 F.2d 186, 187 (2d Cir. 1970).

3. Nothing prevented counsel from seeking to expedite the state proceedings at any time by way of whatever motions or applications he deemed appropriate.

28 U.S.C. § 1343 was instituted in the federal District Court. Taylor's theory was that his employment had been terminated without due process by state officials acting under color of state law.

Analyzing the effect of Taylor's failure to allow the state tribunal an opportunity to pass on his claim, Judge Weinstein wrote:

> In the final analysis, plaintiff has simply failed to meet the reasonable requirement prescribed by the state that, having chosen to appeal to the Commission, he accord that body an adequate opportunity to pass upon his claim. Having knowingly failed to take advantage of state procedural opportunities, he cannot now assert that no opportunity to make his constitutional claim was afforded, and that this Court should refuse to accept the findings of the State's courts and quasi-judicial administrative agencies. *Cf.* Birnbaum v. Trussell, 371 F.2d 672, 679 (2d Cir. 1966). An analogy may be drawn to the writ of habeas corpus where, if there is a deliberate failure to exhaust state remedies, relief may be denied. Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). This is so even though the writ protects the most fundamental of human liberties, it traditionally has been utilized to permit full judicial review in a collateral attack (*Id.*, at 422–424, 83 S.Ct. 822; Townsend v. Sain, 372 U.S. 293, 311–312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963)), and legislation explicitly permits such independent review (28 U.S.C. § 2254(d)). The requirements of comity should not be violated in the context of a civil rights suit such as this one. (309 F.Supp. at 792–793).

In conclusion, Judge Weinstein stated:

> The state provided an adequate means for the vindication of the plaintiff's constitutional interests. He could have sought direct review' . . . in the state courts. . . . *In providing [this option], which plaintiff failed to exercise, the state afforded him due process of law,* and the decisions of the state tribunals should now be accorded determinative effect. (*Id.* at 793) (emphasis added).[4]

The Court of Appeals affirmed the dismissal of Taylor's federal claim, noting that, although "[a]t no time was the constitutional issue [now raised] raised in these [state] proceedings," (433 F.2d at 667), "[h]ad appellant prosecuted his constitutional objection in a timely manner, and had the Commission made an unsatisfactory disposition thereof, the courts of New York, in the exercise of their responsibility under the Supremacy Clause of the United States Constitution to entertain federal constitutional questions, no doubt would have taken jurisdiction of appellant's case." (*Id.* at 668).

> [W]e do not perceive a compelling federal interest to be vindicated which would necessitate overriding clearly strong New York State interests with regard to the finality of state agency decisions and the regulation of state employee behavior, within judicially supervised constitutional limits, of course. To allow collateral attacks on these interests in a federal forum would be to deliver unnecessary and potentially debilitating blows to legitimate areas of state responsibility.

> Appellant has made his statutory election, and by his own admission effectively tied the hands of the New York courts, whose judgment we feel bound to honor. He must now live with his decision. (*Id.* at 671).

As was noted by another Court of Appeals in respect to comparable circumstances in McDowell v. Texas, 465 F.2d 1342 (5th Cir. 1971) (panel opinion adopted *per curiam* by Court *en banc*

---

4. *See* Blanton v. State University of New York, 489 F.2d 377, 384 (2d Cir. 1973) ("At minimum such failure to appeal [to an available source] can be taken as one of the factors to be weighed in determining whether these plaintiffs were deprived of any of their constitutional rights.")

(1972) in light of Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L. Ed.2d 548 (1972), and Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L. Ed.2d 570 (1972)):

> Cases of this genre constitute uniquely State causes of action. As such they are peculiarly within the realm of State Courts. . . . Even though it is patent that the amorphous and protean contours of substantive due process under the Fourteenth Amendment extend to all citizens in all sorts of conditions and circumstances, it is equally axiomatic that federal jurisdiction under § 1343(3) and 42 U.S.C.A. § 1983 cannot be extended to that purely local squabble by the mere invocation of the generalized protection which the words of the amendment confer. (*Id.* at 1345–1346) (citations and footnote omitted).

> If we were to distort §§ 1343 and 1983 to vest federal courts with jurisdiction over the uniquely local substantive matters which this case presents, we would not only impair our ability to consider the vast array of cases that properly belong in federal forums but, as surely as sunrise, we create yet another and unnecessary interference with orderly State processes. (*Id.* at 1346).

*See also* Egner v. Texas City Independent School District, 338 F.Supp. 931, 938–939 (S.D.Tex.1972). Likewise, the words of Judge Croake are extremely relevant on this point:

> It is important then that civil rights actions not be used for the purpose of obtaining a review or retrial of state court proceedings. . . . If this court were to permit an injunction to issue in such cases it would be tantamount to a conclusion on our part that the State courts cannot or will not protect the civil rights of these litigants. . . . As none of the plaintiffs has shown an intentional or purposeful discrimination an injunction should not issue. Greene v. New

York, 281 F.Supp. 579, 581 (S.D.N.Y. 1967) (Citations omitted) (Complaint dismissed as frivolous).

It is clear beyond peradventure of doubt that the Courts of New York are both cognizant of problems of the type of which plaintiff complains and readily available for resolution thereof. Just recently the New York Court of Appeals has recognized that "[t]he equal protection provisions of both the Federal and State Constitutions apply to the actions taken by administrative departments of local governmental units. . . . An agency of the State denies equal protection when it treats persons similarly situated differently under the law. . . . Controversies involving compensation are also subject to review under the guarantees of equal protection. . . ." Abrams v. Bronstein, 33 N. Y.2d 488, 492, 354 N.Y.S.2d 926, 929, 310 N.E.2d 528, 530 (1974) (citations omitted). More particularly, the New York Court of Appeals recently remitted a matter to New York Special Term with directions to remand to the defendant Board for redetermination upon the complaint of a petitioner who was involuntarily retired from municipal employment with ordinary disability benefits without compliance with the minimum requirements of due process. Balash v. New York City Employees' Retirement System, 34 N.Y.2d 654, 355 N.Y.S.2d 577, 311 N.E.2d 649 (1974) (mem.). Thus, it cannot be maintained that the rights which plaintiff seeks to preserve herein cannot be, or are unlikely to be, preserved in the Courts of New York.

As former Chief Judge Friendly has recognized, "[i]t is hard to conceive a task more appropriate for federal courts than to protect civil rights' guaranteed by the Constitution against invasion by the states. Yet we also have state courts whose judges, like those of the federal courts, must take an oath to support the Constitution and were intended to play an important role in carrying it out." H. Friendly, Federal Jurisdiction: A General View 90 (1973) (Footnote omitted). *See generally* N. A. A. C. P.

v. Button, 371 U.S. 415, 427–428, 83 S. Ct. 328, 9 L.Ed.2d 405 (1963); Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); Tang v. Appellate Division of the New York Supreme Court, First Department, 487 F.2d 138, 141 n. 3(2d Cir. 1973), cert. denied, —— U.S. ——, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974); American Fidelity Fire Insurance Co. v. Paste-Ups Unlimited, Inc., 368 F.Supp. 219, 225 n. 5 (S.D.N.Y. 1973); Thistlethwaite v. City of New York, 362 F.Supp. 88, 92 (S.D.N.Y.1973).

It should be remembered that "[t]he existence of the § 1983 remedy does not require that federal courts entertain all suits in which unconstitutional deprivations are asserted. A federal constitutional question must exist 'not in mere form, but in substance, and not in mere assertion, but in essence and effect.' Cuyahoga River Power Co. v. Northern Ohio Traction & Light Co., 252 U.S. 388, 397, 40 S.Ct. 404, 408, 64 L.Ed. 626 [1920]." Freeman v. Flake, 448 F.2d 258, 261 (10th Cir. 1971).

The problem has been well recognized at the highest levels of the federal judiciary.

> The records of the federal courts, including ours, show a heavy burden of litigation in connection with cases of great importance—the kind of litigation our courts must be able to handle if they are to perform their responsibility to our society. Moreover, our Constitution has sought to distribute the powers of government in this Nation between the United States and the States. Surely the federal judiciary can perform no greater service to the Nation than to leave the States unhampered in the performance of their purely local affairs.

Karr v. Schmidt, 401 U.S. 1201, 1203, 91 S.Ct. 592, 593, 27 L.Ed.2d 797 (1971) (Black, J., in chambers). A recent extra-judicial expression of Chief Justice Burger is in accord:

> As to the future I can do no more than emphasize that the federal court system is for a limited purpose and lawyers, the Congress and the public must examine each demand they make on that system. . . . We should look more to state courts familiar with local conditions and local problems.

See Address by Mr. Chief Justice Warren E. Burger on the State of the Federal Judiciary (ABA, Aug. 10, 1970), as quoted in Egner v. Texas City Independent School District, 338 F.Supp. 931, 943 (S.D.Tex.1972).

In sum, it appears that plaintiff has failed to state a claim upon which relief could be granted; he does not allege an absence of available state remedies; he proceeds merely upon an election not to utilize them. Federal jurisdiction requires more than this.

### IV.

■ Even if a claim for relief were stated, this action presents a classic case for the invocation of the doctrine of abstention, which permits a federal court, in the exercise of its discretion, to relinquish jurisdiction where necessary to avoid needless conflict with the administration by a state of its own affairs. Alabama Public Service Commission v. Southern Ry., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); see C. Wright, Law of Federal Courts § 52, at 199–200 (2d ed. 1970).

■ Plaintiff argues that abstention is not appropriate in civil rights actions. The simple answer is that the clear weight of authority in this (and other) circuits is to the contrary. Reid v. Board of Education of the City of New York, 453 F.2d 238 (2d Cir. 1971); Coleman v. Ginsberg, 428 F.2d 767 (2d Cir. 1970).[5] See generally Askew v.

---

5. In each of these cases the Court of Appeals affirmed the District Court's decision, in the exercise of its discretion, to abstain in a civil rights case but reversed the dismissal of the complaint and remanded with directions to the District Court to retain juris-

Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Harrison v. N. A. A. C. P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1969). In a recent action, Cochran v. Ensweiler, 372 F.Supp. 471 (N.D.Ind. 1974), the Court abstained where the case was not one of *invidious discrimination*, or construction of state statutes, or basically a political issue, but rather merely an issue of whether the local courts could better deal with the dispute without any federal interference. The Court held that the dispute was a local affair that could be satisfactorily resolved with a minimum of federal judicial involvement. 372 F.Supp. 471. *See also* Bascom v. Perry, 357 F.Supp. 431, 433 (N.D.Iowa 1973) *(per curiam)* (three judge court).

Judge Friendly has expressed the situation in his usual lucid manner:

> Much may depend on the strength of the federal interest involved; I would be considerably more willing to abstain in a case, *even not within well-marked traditional categories,* where the issue was the permissible length of hair of high school students than when it concerned the rights of black citizens to equal education, housing, or employment opportunities. Another relevant consideration is the degree to which abstention might avoid continuous federal supervision of state functioning.

H. Friendly, Federal Jurisdiction: A General View 95 (1973) (footnote omitted) (emphasis added). *See also* his comprehensive opinion in Phillips, Nizer, Benjamin, Krim & Ballon v. Rosenstiel,

490 F.2d 509, 516 (2d Cir. 1973) ("[T]here is particularly strong reason for abstention in cases which . . . raise issues 'in which the states have an especially strong interest and a well-developed competence for dealing with them.'")

■ From the foregoing it appears clear that, assuming the presence of federal jurisdiction, which is here lacking, and a properly stated federal claim for relief, which is here absent, this Court could—and would—abstain in favor of state procedures in this case involving a specialized aspect of a complex and comprehensive local regulatory scheme of great interest to the State of New York and no overriding federal constitutional question "in essence and effect." Freeman v. Flake, 448 F.2d 258, 261 (10th Cir. 1971).

■ Plaintiff argues that this Court could not abstain in favor of available state remedies, for none are in fact available at this point in time, plaintiff's time in which to commence an Article 78 proceeding having been allowed to lapse. Thus, he concludes, this court would have to hear this case—assuming arguendo the existence of federal jurisdiction and a properly pleaded claim for relief. The short answer is that where it is plaintiff's own election which has eliminated the possibility of recourse to state remedies, he will not be heard to assert the absence of an available state remedy, but will be held to have made a choice and compelled to abide thereby. *A fortiori,* when—as here—plaintiff seeks equity, for it is well established that he who would seek equity must do equity.

diction. *Compare* C. Wright, Law of Federal Courts § 62, at 200 (2d ed. 1970):

In Burford-type abstention, where the federal court defers to avoid interference with state authorities, dismissal of the action, rather than retention of jurisdiction pending a state determination, is normally appropriate. If the state court to which deference is thus shown prejudices any federal rights of the parties, this can be redressed by review of the state decision in the United States Supreme Court. (footnote omitted).

*Cited with approval* in Simmons v. Jones, 478 F.2d 321, 327–328 n. 5 (5th Cir. 1973). *But see* American Trial Lawyers Assn. v. New Jersey Supreme Court, 409 U.S. 467, 93 S.Ct. 627, 34 L.Ed.2d 651 (1973) *(per curiam).*

Plaintiff's assumption that there is no available state remedy in favor of which this Court may abstain is open to considerable doubt. Plaintiff proceeds on the simplistic assumption that his only state remedy would be by way of an article 78 proceeding, which—by his view—is time barred. But this assumption disregards the teaching of Lutheran Church in America v. City of New York, 27 A.D.2d 237, 278 N.Y.S.2d 1, 3 (1st Dep't 1967), wherein the Appellate Division stated:

> We disagree . . . that a proceeding under article 78 being available, the appellant may not resort to another remedy but is confined to an article 78 proceeding and the limitation applicable thereto. . . .

> Where an administrative act is attacked on the basis that the body acted without power and the decision is void, the remedy of a declaratory judgment is not foreclosed by the circumstances that a hearing was had, that a determination was made and that a proceeding was available to the party affected to review such determination. The exercise of a power which offends against the constitution may be attacked at any time.

Moreover, it is possible that plaintiff's time in which to commence an Article 78 proceeding may have been extended by the operation of N.Y.C.P.L.R. § 205(a) —a question on which this Court does not pass. *See* Park & Pollard Co. v. Industrial Fire Ins. Co., 197 App.Div. 671, 189 N.Y.S. 866 (1st Dep't 1921). *But see* Spampinato v. City of New York, 311 F.2d 439 (2d Cir. 1962) *(per curiam)*, cert. denied, 372 U.S. 980, 83 S.Ct. 1115, 10 L.Ed.2d 144 (1963).

Although sympathetic to plaintiff's grievance with the procedural nuances which have afflicted his quest, the Court must be mindful of Judge Mulligan's peroration in Tang v. Appellate Division of the New York Supreme Court, First Department, 487 F.2d 138, 143 (2d Cir. 1973), cert. denied, —— U.S. ——, 94 S. Ct. 1611, 40 L.Ed.2d 111 (1974), to the effect that, "[wh]ile appellant's consti-tutional arguments may well be substantial . . ., the concept of federalism should not be scrapped at the whim of a disgruntled suitor."

Complaint dismissed. No costs.

So ordered.