CUYAHOGA RIVER POWER COMPANY *v.* NORTHERN OHIO TRACTION & LIGHT COMPANY ET AL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

No. 102. Argued March 17, 1920.—Decided April 19, 1920.

Plaintiff, a hydro-electric company organized under a general law of Ohio, averred in its bill to quiet title, that its incorporation constituted a contract whereby the State granted it a right of way for

its plant, along a certain river, between the termini designated in its articles, with the power of eminent domain to acquire title from private owners; that these rights were crystallized by a resolution of its board of directors adopting a detailed plan of power development and definitely and irrevocably fixing the location of its proposed works on specific lands, surveyed by its engineers and essential to the enterprise; that all this, supplemented by condemnation proceedings initiated but not as yet consummated, gave exclusive rights to acquire the lands for plaintiff's corporate objects, through its power of eminent domain; and that the purchase of such lands from their owner by one of two defendant public service corporations, also organized under general laws of Ohio, their transfer to the other with the consent of the state Public Utilities Commission, and their occupation and use by the other for generating electric power, with assertion of immunity from plaintiff's power of condemnation, worked an impairment of plaintiff's contract, and a taking of its property, by state action or agency. *Held,* that the asserted federal questions were too plainly without merit to afford jurisdiction to the District Court. P. 395. *Sears* v. *City of Akron,* 246 U. S. 242.

Affirmed.

THE appeal is direct to this court, the laws and Constitution of the United States being asserted to be involved. Upon motion of defendants (appellees) the bill was dismissed for want of jurisdiction and equity. Its allegations, therefore, become necessary to consider.

Plaintiff (appellant) was incorporated as a hydro-electric power company on May 29, 1908, for the purposes specified in the act of the legislature of Ohio, passed in 1904, and contained in §§ 10,128 and 10,134 of the Ohio General Code of 1910.

The Articles of Incorporation filed May 29, 1908, with the Secretary of State specified the streams across which the dams were to be built and maintained, that is, the streams in controversy, the Big Cuyahoga River and certain of its tributaries.

By said incorporation a contract was duly made and entered into between the State and plaintiff whereby the State granted to plaintiff a right of way over and along the

Cuyahoga River between the designated termini and a vested right and franchise to construct, maintain and operate, within the limits of the right of way, a hydroelectric plant for the development of electric current and energy from the waters of the river, together with a right or franchise to exercise the State's power of eminent domain in order to appropriate and acquire property necessary to carry out and perform the grant and make it effective. The grant has not been repealed.

The grants were accepted and are of great value and upon the faith of that, the capital stock of plaintiff was subscribed for, and large expenditures and investments made and obligations incurred, including bonds of the par value of $150,000, and stock to the value of $210,000, all in a large part prior to December, 1910.

On June 4, 1908, plaintiff by its board of directors adopted a specific and detailed plan for the development of the power and sale of the same to the public, and definitely located its proposed improvements for that purpose upon specifically described lands, which had previously been entered upon and surveyed by its engineers, and then and there declared and resolved that the parcels of land were necessary to carry out the purpose of the plaintiff's organization and that it thereby appropriated and demanded them for its corporate purposes. The parcels of land described in the resolution include all that were necessary for the purpose of the corporation, and the location of the improvement so fixed by the resolution was permanent and irrevocable and conclusive upon plaintiff and all other persons except as the same might be altered by further act of the State.

June 5, 1908, the plaintiff instituted a suit in the court of proper jurisdiction, to condemn or appropriate in accordance with the statutes of Ohio, the parcels of land mentioned in the resolution, and the persons owning the same were made parties. The suit was continuously pend-

ing until a date subsequent to July 18, 1911, but at the instance and request of one of the owners of the parcels,. and of the Northern Ohio Traction and Light Company, called the Traction Company, the suit was not pressed for trial against them until January, 1911, up to which date certain negotiations in regard to the improvement of the Company were proposed, but finally terminated in the refusal of the owner of the land and the Traction Company to sell the land to plaintiff.

December 20, 1910, pending the suit and negotiations, the landowner executed a deed of the lands to The Northern Realty Company, conveying to it a fee simple title.

January 20, 1911, after unsuccessful negotiations with the Realty Company, plaintiff instituted another suit for the condemnation of the land, which suit was prosecuted in the Probate Court (the court of jurisdiction) and is now pending in the Supreme Court of the United States, undetermined, to which court it was carried by a writ of error from the Court of Appeals of Ohio.

January 31, 1911, and while the suit above mentioned was pending, the Realty Company conveyed the land that had been conveyed to it, to the Northern Ohio Power Company, and the latter company conveyed that and other land which it had acquired, and all of its properties, rights and franchises to the Traction Company and the latter company entered upon the lands and now holds possession of them and of the improvements erected thereon.

Prior to January 20, 1911, no location or improvement upon the lands above designated was made for the purpose of utilizing them in the development of power and they were actually employed for no use whatsoever, except a small wooden structure intended and occasionally used for dances and roller skating, a small portion of which structure was within all of the parcels.

Between January 31, 1911, and February 24, 1914, there

was erected upon the lands designated, a power-house and other appliances for the generation of electric current and energy by means of steam power, also a dam, a power-house and other appliances for the generation of electric current and energy by the flow and fall of the waters of the river.

(There is an allegation of the capacity of the plants which may be omitted. Other allegations in regard to the various companies and the powers they possess and do not possess also may be omitted. It is only necessary to say that it is alleged that the Power Company had not, and the Traction Company has not, power to use the designated lands or the waters of the river to operate the steam power plant and the hydro-electric plant, or for the development of such powers and, therefore, neither company had power to exercise eminent domain for such purposes, though asserting its right and intention to do so, and if it should do so, it would invade and injure rights of plaintiff, inflicting "upon the plaintiff and the persons interested therein a continuing, permanent and irreparable injury, for which there is no adequate remedy at law.")

From and after the time of the adoption of the resolution of June 4, 1908, the designated parcels of land were subjected to plaintiff's public use and its rights and franchises, exclusive of all other persons and corporations; that such rights and franchises were granted to plaintiff by the State of Ohio under and by authority of plaintiff's contract with the State, and for the protection of which plaintiff is entitled to and claims the protection of the Constitution of the United States and of the Amendments thereof, as well as § 5 of Article XIII of the constitution of the State of Ohio.

The effect and result of the Traction Company's use of the designated parcels of land and of the waters of the river is an appropriation by it of the rights and franchises of plaintiff and the deprivation of its property for private

use without compensation and without due process of law, contrary to the Fourteenth Amendment of the Constitution of the United States, and an impairment of the contract of plaintiff with the State of Ohio within the meaning of Article I of the Constitution of the United States.

Plaintiff has at all times and since its incorporation, actively and diligently and in good faith proceeded to carry out and accomplish its corporate purpose.

In April, 1909, the plaintiff amended its resolution of June 4, 1908, and enlarged its proposed plant and the output and product thereof and obtained a grant from the State over the additional portion or section of the Cuyahoga River so as to carry out the amended plan, and it provides for the utilization of the designated parcels of land necessary to the plaintiff's rights and franchises. (The additional capacity is alleged.)

The prayer is that plaintiff's rights and franchises be established and adjudged; that the proceedings complained of be decreed a violation of the plaintiff's rights, and of the constitution of Ohio and the Constitution of the United States, and a taking its property without due process of law. And that an injunction be granted against their further exercise; that defendants be required to remove the structures and devices already erected upon the lands, or to convey them to the plaintiff, and that a receiver be appointed to take possession of the lands and structures. An accounting is also prayed, and general relief.

*Mr. Carroll G. Walter,* with whom *Mr. William Z. Davis* and *Mr. John L. Wells* were on the briefs, for appellant.

*Mr. John E. Morley* and *Mr. J. S. Clark,* with whom *Mr. S. H. Tolles* and *Mr. T. H. Hogsett* were on the briefs, for appellees.

Mr. Justice McKenna, after stating the case as above, delivered the opinion of the court.

As we have said, a motion was made to dismiss the bill. The grounds of the motion were that there was no jurisdiction in the court, the controversy not arising under the Constitution and laws of the United States, and that the bill did not state facts sufficient to constitute a cause of action against defendants or either of them.

There is an assertion, in words, of rights under the Constitution of the United States, and the only question now presented is whether the assertion is justified by the allegations of the bill. Putting the question concretely, or rather the contention which constitutes its foundation, the District Court said, "The contention of the plaintiff is that by virtue of its charter, it has appropriated the potentialities of the river and its tributaries within the boundaries by it designated in its resolution of improvement, and that it is entitled, because of its incorporation under the general laws of the State, to exclude any use of the water power of these streams of the nature of the use which it anticipates enjoying in the future while it proceeds, however dilatorily, to make its improvements in detail and to complete its ambitious scheme. In brief, its proposition is that its charter is equivalent to a contract with the State of Ohio giving it the exclusive right to the employment of the benefits which nature has conferred upon the public through the forces of these streams to the end that, until it finds itself able to completely occupy all the territory which it has privately designated to be necessary for its use, the public shall not have the advantage of any portion not immediately occupied by it through the employment of the resources thereof by another public utility company."

The court rejected the contention holding that it was not tenable under the law and constitution of Ohio. To

sustain this view the court cited prior Ohio cases, and certain cases on the docket of the court, and, as an inference from them, declared that it was "not true in Ohio that the character of complainant gave to it 'a vested right seemingly unlimited in time to exclude the rest of the world from the water sheds it chose' simply by declaring by resolution just what territory it hoped in the future to occupy to carry out its purposes" and further, "the terms of Section 19, Art. I of the Ohio constitution militate against plaintiff's claim. Until appropriation is completed as provided by the condemnation laws of the State, the Traction Company's right to dominion over its holdings is inviolate. *Wagner* v. *Railway Co.*, 38 O. S. 32." The court also cited *Sears* v. *City of Akron*, 246 U. S. 242 (then just delivered) expressing the view that if the case had been brought to the court's attention sooner, a less extended discussion of the motion to dismiss could have been made.

We concur with the District Court both in its reasoning and its deductions from the cited cases. The contention of plaintiff is certainly a bold one and seemingly erects into a legal principle, that unexecuted intention, or partly executed intention, has the same effect as executed intention, and that the declaration of an enterprise gives the same right as its consummation. Of course, there must be a first step in every project as well as a last step, and in enterprises like those we are considering there may be attainment under the local law of a right invulnerable to opposing assertion. And this plaintiff contends. To be explicit it contends that as against the Power Company and the Traction Company, they being its competitors in the same field of enterprise, its resolution of June 4, 1908, constituted an appropriation of the waters of the river, and a definite location of "its proposed improvement for that purpose upon specifically described parcels of land previously entered upon and surveyed by its engineers." Whether the

resolution had that effect under the Ohio laws we are not called upon to say. Indeed, we are not so much concerned with the contention as the ground of it. Plaintiff alleges as a ground of it, a contract with the State of Ohio, by its incorporation, "wherein and whereby said State duly granted to the plaintiff a right of way over and along said Cuyahoga River" between the designated termini, with the rights and franchises which we have mentioned, together "with the right or franchise of exercising the State's power of eminent domain in order to appropriate and acquire all property necessary to carry out and perform said grant and make the same effective" and that the acts of defendants, having legislative sanction of the State, impair plaintiff's contract.

It is manifest, therefore, that the determining and effective element of the contention is the charter of the State, and plaintiff has proceeded in confidence in it against adverse adjudications. One of the adjudications is *Sears v. City of Akron, supra.* The elemental principle urged here was urged there, that is, there was urged there as here, that the charter of the company constituted a contract with the State, and that the contract was to a conclusive effect executed by the resolution of the board of directors of plaintiff on June 4, 1908, such resolution constituting an appropriation of the lands described therein, they being necessary to be acquired in order to construct and maintain the improvement specified in the plaintiff's charter and resolution. The principle was rejected and it was decided that the incorporation of plaintiff was not a contract by the State with reference to the riparian rights, and that if plaintiff acquired riparian rights or specific rights in the use and flow of the water, that "would be property acquired *under* the charter, not contract rights expressed or implied in the grant of the charter."

The case is determinative of the plaintiff's contention here, and it is manifest if plaintiff has any rights, they

are against defendants as rival companies or against them as land owners, rights under the charter, not by the charter, considered as a contract express or implied. The District Court recognized the distinction and confined its decree accordingly. The court refused to speculate as to what plaintiff might be able to do hereafter in the assertion of rights against the Traction Company, but declared that it was against public policy to accede to the contention of plaintiff that, in the absence of specific acquirement, plaintiff could prevent an owner of property within its territory from occupying or using the same, without condemnation proceedings being had and compensation paid or secured for such property.

The court, therefore, was considerate of the elements of the case and of plaintiff's rights both against defendants as rival companies or as land owners, and necessarily, as we have said, if either or both of them be regarded as involved in the case, its or their assertion cannot be made in a federal court unless there be involved a federal question. And a federal question not in mere form but in substance, and not in mere assertion, but in essence and effect. The federal questions urged in this case do not satisfy the requirement. The charter as a contract is the plaintiff's reliance primarily and ultimately. Independent of that it has no rights or property to be taken, that is, independently of the resolution of June 4, 1908, there was no appropriation or condemnation of the land. *Wagner* v. *Railway Co.*, 38 Ohio St. 32.

Having nothing independently of its charter and the resolution of June 4, 1908, it could be divested of nothing and it must rely upon the assertion of a contract and the impairment of it by the State or some agency of the State exercising the State's legislative power. That there is such agency is the contention, but what it is exactly it is not easy to say. We, however, pick out of the confusion of the bill, with the assistance of plaintiff's brief, that the rights

it acquired, and by what they are impaired, are as follows: By the resolution of June 4, 1908, the lands described in the bill (Exhibit A) became, and ever since have been, subjected to plaintiff's public use and subject to its rights of way and franchises exclusive of all other persons or corporations, that the Traction Company asserts and claims that by reason of purchases of the rights and franchises of The Northern Ohio Power Company sanctioned by the orders of the Public Utilities Commission as set forth in the bill, and the construction by the Traction Company of power plants upon the designated tracts of land, they, the tracts of land, have become subject to a public use and cannot be appropriated by plaintiff. And it is said (in the brief) that the Traction Company bases its claim upon the state laws, that is, the incorporation of the defendant Power Company and the Public Utilities Commission's orders.

It is manifest that there was no state legislative or other action against any charter rights which plaintiff possessed. What the Traction Company may, or does claim, cannot be attributed to the State (its incorporation antedated that of plaintiff), and it would be a waste of words to do more than say that the incorporation of plaintiff under the general laws of the State did not preclude the incorporation of the Power Company under the same general laws. What rights, if any, the Power Company thereby acquired against plaintiff is another question. There remains then, only the order of the Public Utilities Commission, authorizing the conveyance by the Power Company of the latter's rights and franchises to the Traction Company, to complain of as an impairment of plaintiff's asserted contract. But here again we are not disposed to engage in much discussion. The Commission's order may or may not have been the necessary condition to a conveyance by the Power Company of whatever rights it had to the Traction Company. (§ 614-60, Page and Adams Ohio General

Code.) The order conferred no new rights upon the Power Company which that company could or did convey to the Traction Company, nor give them a sanction that they did not have, nor did it affect any rights of the plaintiff.

From every federal constitutional standpoint, therefore, the contentions of plaintiff are so obviously without merit as to be colorless and whatever controversies or causes of action it had were against the defendant companies as rivals in eminent domain, or as owners of the lands, and, diversity of citizenship not existing, the District Court of the United States had no jurisdiction.

*Decree affirmed.*

MR. JUSTICE DAY and MR. JUSTICE CLARKE took no part in the consideration or decision of this case.