**Benita GARVIN, as next friend for Peter Link, individually and on behalf of others similarly situated and on behalf of the Redford Student Mobilization Committee, a non-profit unincorporated voluntary association, Plaintiffs-Appellants,**

v.

**Arthur ROSENAU, individually and in his capacity as principal of Redford High School, et al., Defendants-Appellees.**

**No. 71–1473.**

United States Court of Appeals,
Sixth Circuit.

Feb. 7, 1972.

---

Ronald Reosti, and Gabe Kaimowitz, Detroit, Mich., for plaintiffs-appellants; Lafferty, Reosti, Jabara, Papakhian, James, Stickgold, Smith & Soble, Detroit, Mich., on brief.

Carl H. von Ende, Detroit, Mich., for defendants-appellees; Miller, Canfield, Paddock & Stone, Detroit, Mich., on brief.

Before PHILLIPS, Chief Judge, and PECK and MILLER, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

A group of students associating as the Student Mobilization Committee complains that the principal of Redford High School in Detroit, Michigan, infringed upon its First Amendment guarantee of free speech and other constitutional rights. Specifically, the students allege that because their organization espouses a "partisan" idea, it is denied the opportunity to express and promote its point of view within the school. The student association (SMC) desires to have the same benefits accorded to other student groups "recognized" by the school administration. The complaint seeks relief pursuant to 42 U.S.C. § 1983 and asks for a declaratory judgment that the denial of recognition to the organization violates the First, Fourth, and Fourteenth Amendments. It further seeks an injunction restraining the defendants from interfering with the constitutional rights of the students. The defendants in the court below denied that any of the students' rights were violated. In the district court, the parties agreed that all argument and testimony relevant to the issue would be presented at a hearing on a motion for preliminary injunction and that such hearing would

be treated as one upon the merits. Following the hearing, the district court entered an order abstaining from a decision and dismissing the complaint. From that order the students appeal.

The student organization involved here is a high school chapter of the nationwide Student Mobilization Committee. The Redford SMC opposes United States intervention in Southeast Asia and wishes to express the club views at Redford High School. The student group sought official school recognition by complying with prescribed conditions and submitted to the defendant principal a statement of its aims and constitution. The principal denied recognition because " . . . the general policy of the school was opposed to recognizing political activity groups representing one point of view."[1] Without official recognition, a school group cannot announce club meetings, cannot use school bulletin boards or put up posters in the school buildings, cannot have a club booth in the school or distribute literature therein, cannot raise funds for the organization within the school, cannot plan assembly programs, and cannot meet in school facilities at all during the school day. Such a group could, however, apply for after-school use of school facilities, with charge, through the Community Use of Schools Division of the Board of Education. Such withholding of privileges is not imposed as to "recognized" clubs which supposedly do not express the proscribed "partisan" ideas.

The justification for the prohibition against clubs which express a "partisan" point of view is that the principal is "very much concerned about the permitting of any one group that represents one idea only carrying the imprimatur of Redford High School," and that the principal is "very much concerned that clubs of this kind could be a very divisive element."[2] No evidence was presented that the students involved had interfered with school discipline or the rights of others.

The principal stated that, in keeping with the general policy of the school, no other group supporting one point of view, such as the Young Republicans or the Young Democrats, was given recognition. An Ecology Club was, however, recognized. The principal stated that its purpose was to create a better environment. He found a categorical difference between the idea supported by the SMC and the idea supported by the Ecology Club.[3] Although the principal

1. This school policy is an implementation of the policy established by the defendant Board of Education.

2. The principal further testified:
   Q. You said that you told them they would not be recognized as a school sponsored organization. Did you at that time tell any of the individuals there what if any avenues they did have to express the views which they held?
   A. Yes, at the time I recommended that we have classes in American history, civics and economics, in which controversial issues are the meat of our course, in which they are welcome to discuss any of those. I also recommended specifically the current affairs club, which is a club sponsored by social studies, by the department, and the sponsor is, to the best of my knowledge, always a social studies teacher. So here was an open forum for all points of view to be expressed on a balanced position with all sides represented.
   *      *      *      *      *
   . . . I would much prefer to have these ideas presented in an impartial way, for instance, with our Current Affairs Club.

3. Q. Now, the Ecology Club, does the Ecology Club support one particular idea?
   A. An idea, yes, of somewhat different category. I think it supports an idea that cleanliness, I guess, which we have promoted over the years, is a policy that we should all follow and so their policy has been, let's clean up.
   Q. All right. In other words, you are saying that the support by the Ecology Club of the policy, let's clean up, is qualitatively different than the support that the SMC gives to the idea of or the issue of the immediate with-

indicated that he was unaware of any partisan political position taken by the Ecology Club, a student member of that group testified that the club distributed literature within the school supporting a particular piece of Michigan legislation allowing private citizens to sue polluters. He further testified that the club actively opposed the construction of the Supersonic Transport.

As stated, the district court applied the doctrine of abstention. The order of the court stated:

> Having considered the pleadings, briefs, and affidavits in this matter, it is the opinion of this Court that this matter would be more appropriately handled by the state courts. See Wisconsin v. Constantineau [400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515] 39 U.S.L.W. 4128, Chief Justice Burger dissenting at 4129, (1971); Alberda v. Noell [322 F.Supp. 1379], No. 3060 (E.D.M. February 17, 1971). The court wishes to make it clear that it expresses no view as to the merits of this case, and that it expects that the plaintiffs will be able to have a hearing on the merits in the state court. This Court abstains.

> In view of the foregoing, it is hereby ORDERED that the case is dismissed.

Because we disagree with the district court's abstention, we shall consider first, the apparent basis for the court's order and second, our conception of the propriety of the abstention doctrine in the particular circumstances of this case.

In concluding that "this matter would be more appropriately handled by the state courts," the court below cited only Chief Justice Burger's dissent in Wisconsin v. Constantineau, 400 U.S. 433, 439–443, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), and Alberda v. Noell, D.C., 322 F.Supp. 1379 (1971). The Chief Justice's dissent and the district court decision (the latter in turn relying upon the

*Constantineau* dissent) express a common concern. Both deplore the congestion of the federal courts and the presence in those courts of "state" cases considered undesirable.

In *Constantineau, supra*, a state statute was attacked as violating procedural due process. The statute allowed designated persons, without notice or hearing, to cause to be posted, in all retail liquor outlets a notice that sales or gifts of liquor to named excessive drinkers were forbidden. Although the statute had never been construed or challenged in the Wisconsin courts, the Supreme Court held that the three-judge court properly refused to abstain. In dissenting, the Chief Justice states:

> This Court has an abundance of important work to do, which, if it is to be done well, should not be subject to the added pressures of non-urgent state cases which the state courts have never been called on to resolve. 400 U.S. at 443, 91 S.Ct. at 513.

The court in Alberda v. Noell, *supra*, was presented with constitutional challenges to certain school dress and grooming regulations. The plaintiffs had not sought relief in state court. After a lengthy opinion, the district court abstained from a decision. The court's opinion quoted the above-cited portion of the *Constantineau* dissent and subsequently concluded that the issues were local school matters which would be more appropriately resolved by the state. The *Alberda* court made clear its dislike of the "hair" cases and other cases involving "local school matters." The court found "no right, considered especially important by the federal judiciary, threatened; we see no irreparable harm flowing from declining federal jurisdiction." It disapproved of those who would "foist these cases upon the severely beset and overburdened federal courts." 322 F.Supp. at 1383–1384.

It would thus appear that the district court's abstention was grounded upon its

drawal of United States troops from Indo-China?

A. Yes, I see a categorical difference there.

concern for judicial economy and its belief that "local school matters" should be handled by state courts. We do not find either consideration sufficient for invoking the abstention doctrine. We think the Supreme Court in Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967), effectively responded to the district court's view of abstention:

> In thus expanding federal judicial power, Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, " . . . to guard, enforce, and protect every right granted or secured by the Constitution of the United States . . .," Robb v. Connolly, 111 U.S. 624, 637, [4 S.Ct. 544, 28 L.Ed. 542.] "We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum." Stapleton v. Mitchell, D.C., 60 F.Supp. 51, 55; see McNeese v. Board of Education, etc., 373 U.S., [668] at 674, n. 6, [83 S.Ct. 1433, 10 L.Ed.2d 622.] Cf. Cohens v. Virginia, 6 Wheat. 264, 404, 5 L.Ed. 257.

The Court then stated that "[t]he judge-made doctrine of abstention, first fashioned in 1941 in Railroad Commission v. Pullman Co., 312 U.S. 496, [61 S.Ct. 643, 85 L.Ed. 971,] sanctions such escape only in narrowly limited 'special circumstances.'" In concurring in the *Zwickler* judgment, Mr. Justice Harlan noted that:

> This Court has repeatedly indicated that "abstention" is appropriate "where the order to the parties to repair to the state court would clearly serve one of two important countervailing interests: either the avoidance of a premature and perhaps unnecessary decision of a serious federal constitutional question, or the avoidance of the hazard of unsettling some delicate balance in the area of federal-state relationships." 389 U.S. at 255, 88 S.Ct. at 399.

The mere statement of the standards for abstention: avoidance of unnecessary constitutional decisions and avoidance of needless friction with state policies, displays their vagueness and indicates the potential difficulties in their application. For example, if the "avoidance of needless friction" standard were applied without due consideration, very few federal question cases challenging any aspect of state law or state authority would be appropriate for the federal courts. For a proper application of the standards, therefore, we look to the circumstances of the cases in which the doctrine has been applied.

The *Pullman* case first articulated some of the concerns underlying abstention to avoid unnecessary constitutional adjudication. There the Texas Railroad Commission ordered that every sleeping car must be in the charge of a conductor rather than a porter. Conductors were Caucasian while porters were Negro. The Pullman Company and the Negro porters attacked the order as unauthorized by Texas law and as violative of the Constitution. The Court abstained so that the state issue of statutory authority could be determined first.[4] The Court's concern was that a federal

4. Another consideration involved the complaint of the Negro porters. " . . . it touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open." 312 U.S. 498, 61 S.Ct. 644. Today the presence of such an issue would be a compelling reason

court's tentative interpretation of a state statute would later be displaced by state adjudication thus leaving an unnecessary constitutional decision. Subsequent cases indicate that such a concern is most evident when a federal court is asked to strike down a state statute which "might be judicially confined to a more narrow ambit which would avoid all constitutional questions." Fornaris v. Ridge Tool Co., 400 U.S. 41, 44, 91 S.Ct. 156, 158, 27 L.Ed.2d 174 (1970); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Spector Motor Co. v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101 (1944).

The *Pullman* case also stated the second countervailing interest referred to by Mr. Justice Harlan when it mentioned the desirability of avoiding "needless friction" between federal courts and the states. Abstention on this ground has been justified by the narrow circumstance that exercise of jurisdiction by a federal court would disrupt a comprehensive state administrative process. Alabama Public Service Comm'n v. Southern Ry., 341 U.S. 341, 71 S.Ct. 762, 95 L.Ed. 1002 (1951); Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943);

Holmes v. New York City Housing Authority, 2 Cir., 398 F.2d 262 (1968).

██ While this statement on the abstention doctrine is not intended as a definitive exposition, it is intended to emphasize that abstention is appropriate only in narrowly limited special circumstances. The mere fact that a constitutional decision conceivably could be avoided [5] or that federal-state friction might arise does not automatically justify resort to the doctrine. The facts and circumstances of each case must be carefully examined in order to evaluate the policies to be served by abstention. Thus, resort to abstention is appropriate only if the narrowly limited countervailing interests are, on balance, more important to the federal constitutional system than a litigant's right to a federal forum.

We turn now to a consideration of the facts and circumstances of the instant case. We note that the answer of the defendants in the court below did not seek to invoke the abstention doctrine. On appeal, however, the appellees recite the shibboleths of abstention and urge their application to the instant case.[6] We do not believe, however, that adjudication of the merits of this case will result in either an "unnecessary constitu-

for not abstaining. See, e. g., Wright v. McMann, 2 Cir., 387 F.2d 519 (1967); Jordan v. Hutcheson, 4 Cir., 323 F.2d 597 (1963).

5. Presumably, in every case in which school regulations on haircuts have been challenged, there was possibly a "state law question" whether the school administration had the authority to issue such a regulation. This justification for abstention has had little acceptance. Jackson v. Dorrier, 6 Cir., 424 F.2d 213 (1970). Parker v. Fry, 323 F.Supp. 728 (D.C.Ark.1971); Southern v. Board of Trustees for Dallas Independent School Dist., 318 F.Supp. 355 (D.C. Tex.1970); Cf. Alexander v. Thompson, 313 F.Supp. 1389, 1397 (D.C.Cal.1970). Our recent opinion in West Tenn. A.C. L.U. et al. v. City of Memphis, et al., 454 F.2d 1162 directly presented a clear-cut and readily definable issue of state law

the resolution of which could conceivably have avoided the necessity to decide the federal constitutional issue, while here the state issue is probably non-existent in view of the broad authority conferred on boards of education by Michigan statute. (M.C.L.A. Sec. 340.-192).

6. The defendants-appellees apparently would not agree with the district court's abstention for reasons of judicial economy or because of a belief that particular cases simply should be handled by state courts. The brief of appellees, p. 15 states that "[w]e interpret his [Judge Keith's] citation to Alberda v. Noell [322 F.Supp. 1379], (E.D.Mich., February 19, 1971), as reflecting adoption of Judge Roth's application of the 'avoidance of friction' ground for abstention to school cases."

tional decision" or "needless friction" within the federal system.

Here we deal with alleged infringements upon First Amendment rights. That the First Amendment is the essence of democratic government and that free speech is fundamental to our society need no elaboration. Historically, the guarantees of this amendment have been closely guarded by the federal courts. The Supreme Court in *Zwickler* suggested the rationale for giving careful scrutiny to the use of abstention when the First Amendment is involved:

> In such case to force the plaintiff who has commenced a federal action to suffer the delay of state court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect. See Dombrowski v. Pfister, 380 U.S. 479, 486–487, [85 S.Ct. 1116, 14 L.Ed.2d 22;] Baggett v. Bullitt [377 U.S. 360], *supra*, at 378–379, [84 S.Ct. 1316, 12 L.Ed.2d 377]; N.A.A.C.P. v. Button [371 U.S. 415], *supra*, at 433 [83 S.Ct. 328, 9 L.Ed.2d 405]; cf. Garrison v. Louisiana, 379 U.S. 64, 74–75, [85 S.Ct. 209, 13 L.Ed.2d 125;] Smith v. California, 361 U.S. 147, [80 S.Ct. 215, 4 L.Ed.2d 205.] 389 U.S. at 252, 88 S.Ct. at 397, 398.

See also, Long Island Vietnam Moratorium Committee v. Cahn, 2 Cir., 437 F.2d 344 (1970); Moreno v. Henckel, 5 Cir., 431 F.2d 1299 (1970).

■ In this case, the SMC first sought recognition in the spring of 1970. Since that time, it has been denied the opportunities which it seeks to express its point of view. Further delay necessitated by abstention would be inconsistent with the policy of protecting the First Amendment against possible chilling influences. Thus abstention in the present circumstances would have to be justified by strong countervailing interests.

■ In this case we do not need to construe a state statute to determine

whether it applies to the parties involved, nor are we asked to strike down an unclear state statute before state courts have construed it.[7] And neither are we asked to upset a comprehensive administrative process. On the basis of these considerations, we conclude that the interests to be secured by abstention are not so clear or compelling as to justify denial of the appellants' right to a federal forum.

■ Because we find abstention inappropriate here, we shall consider appellees' contention that the case should be dismissed for lack of a substantial federal question. To give a federal court jurisdiction, a federal question must, of course, be substantial. Cuyahoga River Power Co. v. Northern Ohio Traction & Light Co., 252 U.S. 388, 40 S.Ct. 404, 64 L.Ed. 626 (1920). In Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152 (1933), the Supreme Court explained substantiality:

> The question may be plainly unsubstantial, either because it is "obviously without merit" or because "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy." Levering & Garrigues Co. v. Morrin [289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062], *supra*; Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288, [30 S.Ct. 326, 54 L.Ed. 482;] McGilvra v. Ross, 215 U.S. 70, 80, [30 S.Ct. 27, 54 L.Ed. 95.] Id. at 32, 54 S.Ct. at 4.

■ There is no assertion here that previous court decisions foreclose the issue presented, but appellees do maintain that the question presented is obviously without merit. To be obviously without merit, an alleged constitutional claim might represent an attempt to obtain federal jurisdiction by the mere assertion of a frivolous connection between the constitution and the subject

---

7. See Baxter v. Ellington, D.C., 318 F.Supp. 1079 (1970).

matter of the dispute, or the alleged claim might simply be immaterial to the real controversy. See Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946). Our view is that the question presented by the students here is not insubstantial. It cannot be seriously maintained that there is only a frivolous connection between the First Amendment guarantee of free speech and the School Board's policy of restricting the student group's expression of partisan ideas. The substantiality of a federal question is not measured by its impact upon society. Certainly the constitutional claim here is no less substantial than the claim of the right to wear a black armband to school upheld in Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). We conclude that the complaint may not be dismissed for a lack of a substantial question.

The court below should have considered the contentions of the appellants. On remand, the district court should consider, among other things, the assertion that the defendants have infringed upon the students' First Amendment rights without justification, and the contention that no compelling reason justifies the challenged classification which penalizes "partisan" ideas. See Tinker, supra, at 512–514, 89 S.Ct. 733, and Zucker v. Panitz, D.C., 299 F.Supp. 102 (1969).

Because the complaint was improperly dismissed, the order of the district court must be vacated and the action remanded for a consideration of the merits of the complaint. This assessment will be made on the basis of the record developed at the hearing without taking further testimony unless the court in its sound discretion should see fit, on motion, to reopen the case for further evidence on behalf of one or more parties. We express no opinion on the merits of the case further than to say that the federal issue is not insubstantial.