Doreen **RAPPAPORT** et al., Plaintiffs,

v.

**Herman KATZ, Individually and as Clerk
of the City of New York,
Defendant.**

No. 74 Civ. 287 (MP).

United States District Court,
S. D. New York.

Sept. 3, 1974.

See also, D.C., 62 F.R.D. 512.

New York Civil Liberties Union, for
plaintiffs; by Eve Cary, Bruce J. Ennis,
New York City, of counsel.

Adrian P. Burke, New York City,
Corp. Counsel for the City of New
York.

OPINION

POLLACK, District Judge.

This is an attempted federal suit
against the City Clerk of the City of
New York, cast in the mold of a suit for
violation of Civil Rights, 42 U.S.C. §
1983 seeking an injunction and damages.
Both sides have moved for summary
judgment. The defendant's motion will
be granted and the complaint will be dis-
missed.

The plaintiffs are two couples, one
having been married by the defendant
City Clerk on November 2, 1973 and one
who has been planning marriage and is
looking forward to a ceremony to be per-
formed by the City Clerk. They com-
plain that they were subjected (or are
to be subjected) to dress guidelines pro-
mulgated by the City Clerk to be ob-
served for wedding ceremonies at City
Hall, including the exchange of a ring or
rings. These guidelines are said to de-
prive them of due process of law in vio-
lation of their constitutional rights. On
oral argument, plaintiffs' counsel said
that plaintiffs were not now claiming
any violation of First Amendment
rights.

The questioned guidelines are custom-
arily handed to persons when they re-
ceive their marriage licenses if they re-
quest the City Clerk or his deputy to of-
ficiate at the wedding. Among other
things the guidelines say that:

9) Every couple should be properly
attired, the bride must wear a
dress or skirt and blouse—no
slacks—and the groom must wear
a coat and tie.

10) One or two rings must be ex-
changed.

An office policy accepts in lieu of a
tie, a turtleneck shirt or other shirts or

jackets that do not require a tie. The ring requirement may be satisfied by the exchange of any other tangible item; the plaintiffs are not pressing any claim herein in regard to this requirement or its substitutes.

Plaintiff Rappaport wished to wear pants to her wedding but was told to present herself in a skirt. She did, but was unhappy that she did not wear her green velvet pants suit for her wedding. Plaintiff Dibbell states that she wishes to wear pants to her wedding, and she and her intended spouse say they do not wish to exchange either one or two rings as part of their wedding ceremony. The couple to be married are a free lance journalist and a music critic. The bride-to-be says: "I find dressing in pants . . . protects me from much of the sex-role stereotyping to which women continue to be subjected both professionally and socially." The groom-to-be says: "Because marriage has traditionally been an unequal yoke, it is essential to me that my marriage ceremony emphasize the equality of the partnership. For this reason, our dress at this ceremony must be virtually identical." The plaintiffs charge that defendant's guidelines put them to the choice between their statutory right to be married by the City Clerk and their fundamental right to marry free of unwarranted governmental intrusion on their privacy and with free expression.

The state statute, Dom.Rel.L. § 11–a, McKinney's Consol Laws, c. 14, imposes on the New York City Clerk the duty to solemnize marriages when so requested:

> Whenever persons to whom the city clerk of any such city of the first class shall have issued a marriage license shall request him to solemnize the rites of matrimony between them and present to him such license it shall be the duty of such clerk, either in person or by one of his deputies or the permanent members of his staff so designated by him to solemnize such marriage;

The City Clerk draws attention to the word "solemnize" repeated in the statute from which he infers a duty to conduct a solemn, not a frivolous occasion. In his answer to the complaint he sets out the following factual background of marriage solemnization in his offices. He asserts that the City of New York has spent hundreds of thousands of dollars in decorating and maintaining appropriately, separate chapels for such solemnizations in each of the five boroughs of the City, in keeping with the solemnity attached to the nature of the marriage obligations publicly assumed by every couple in said chapels. During the last six decades, he says, couples who sought the solemnization service of the City Clerk invariably appeared in appropriate clothes for this single most important event in their lives. They appeared in coat and tie, skirt and blouse, with rings or other tokens of exchange for the declaration of their vows of marriage. Many appeared with formal bridal gowns and tuxedos and with flowers and bridal attendants in formal attire. No rules were published. It was assumed that all would appear appropriately attired. The Clerk believes that in those years it would have been presumptuous to advise citizens of New York of the commonly accepted details of wedding clothes or attire.

The Clerk asserts that between the years 1960 and 1964 a scattering of couples appeared for marriage rites without ties or coats, open chested, zippered jackets and sweaters, nondescript and dirty pants, brides in colored loose pajama outfits with no blouse and with only a halter, jeans marked with graffiti in front and rear, shredded cuffs on their denim pants, spotted slacks, plaid trousers, shorts and other nondescript apparel and without rings. When the City Clerk and his staff remonstrated with such men and women that their clothes indicated an absence of respect and recognition of their proposed new family status, the reply was that no one ever advised them of what would be proper. Consequently, in about 1965, the City Clerk for the first time prepared simple and practical guidelines on a number of

matters, including what would be considered accepted attire when the City Clerk was called upon to participate in and perform his role in the solemnization of marriage. In 1973 the offices of the City Clerk solemnized twenty thousand marriages out of the seventy-two thousand licenses issued. For the very few who sometimes for whatever reasons had forgotten, overlooked or been neglectful of the guidelines for dress and rings, each of the Chapels was provided with coats, ties and rings, for use of the parties at such ceremonies. Apparently, experience teaches that women prefer to use their own skirts and they wear or bring them for the occasion, so no supply of spares of these is kept on hand by the Clerk.

Couples who select their special ethnic, ancestral or national dress in which to be married, such as a dashiki, a kimona with obi or a cheongsam, or service persons in uniform, are served and have been served by the City Clerk as being attired consonantly with the coat, tie, skirt and blouse and dress guidelines.

The Clerk calls attention to the alternative provided by the state legislature for those who resent or object to furthering the solemnity of the occasion by the suggested manner of their dress at the "solemnization" by the Clerk. That alternative gives those who are irked the opportunity, devoid of any particular decorum, to enter into a valid marriage merely by the signature at any place, in any mode of attire or the lack of it, of a contract of marriage. Dom.R.L. § 11(4).

The defendant Clerk contends that any issues respecting form, ritual, conduct and detail by officiants selected by the state to perform solemnizations and rites of matrimony are either not within the jurisdiction of the federal courts or at least should not be accepted by federal courts for determination. He contends that such issues are significantly local in character and should be reserved to the state and to the local communities within the state.

And further, he contends that if there is an abuse of discretion by the City Clerk, since he is a public officer of The City of New York, the Council of the City of New York could by its resolution direct the City Clerk to accept "pants" in all its cult phases and request him to cancel his guideline. He says that the controversy attempted to be generated herein is a community matter and should be determined by community self-interest.

The plaintiffs recognize that the state has a substantial interest in assuring that couples married by the City Clerk fully comprehend the commitment they are making but they assert on the other hand that the guideline is unrelated to and unconnected with the proper performance of the Clerk's duties and is devoid of any justification therefor. The Clerk puts this in issue and claims that there is a connection with and relation to his statutory function as he understands it and its purposes.

The United States Constitution and Statutes do not expressly or out of any necessity impose on the federal courts the duty and responsibility of supervising the mode of dress in which an intended groom and bride may take their marriage vows in the office of the City Clerk of The City of New York.

Touching on the underlying concept of federal-state relationships the late Mr. Justice Black as Circuit Justice denied a motion to vacate a Court of Appeals stay of a district court's injunction in the following significant language in Karr v. Schmidt, 401 U.S. 1201, 91 S.Ct. 592, 27 L.Ed.2d 797 (1971):

The records of the federal courts, including ours, show a heavy burden of litigation in connection with cases of great importance—the kind of litigation our courts must be able to handle if they are to perform their responsibility to our society. Moreover, our Constitution has sought to distribute the powers of government in this Nation between the United States and the States. Surely the federal judiciary can perform no greater service to

the Nation than to leave the States unhampered in the performance of their purely local affairs. Surely few policies can be thought of that States are more capable of deciding than the length of the hair of schoolboys. There can, of course, be honest differences of opinion as to whether any government, state or federal, should as a matter of public policy regulate the length of hair cuts, but it would be difficult to prove by reason, logic, or common sense that the federal judiciary is more competent to deal with hair length than are the local school authorities and state legislatures of all our 50 States. Perhaps if the courts will leave the States free to perform their own constitutional duties they will at least be able successfully to regulate the length of hair their public school students can wear. (p. 1203, 91 S.Ct. p. 593)

While diverse views have been expressed in other long hair cases, the concept of Mr. Justice Black's opinion remains valid.

In a similar vein, Judge Breitenstein, writing for the Tenth Circuit, in Freeman v. Flake, 448 F.2d 258 (1971) said:

The remedy provided by § 1983 is supplementary to any pertinent state remedy. See Monroe v. Pape, 365 U. S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492. The proliferation of litigation resulting from the expanded use of § 1983 is apparent to anyone familiar with the reported decisions of the courts of the United States. *The existence of the § 1983 remedy does not require that federal courts entertain all suits in which unconstitutional deprivations are asserted.* A federal constitutional question must exist "not in mere form, but in substance, and not in mere assertion, but in essence and effect." Cuyahoga River Power Co. v. Northern Ohio Traction & Light Co., 252 U.S. 388, 397, 40 S.Ct. 404, 408 64 L.Ed. 626. (Emphasis Supplied).

Alberda v. Noell, 322 F.Supp. 1379 (E.D.Mich.1971) tersely expressed a view apposite herein:

We must do more than wring our hands when we on the federal bench are imposed upon to entertain cases best left to the states. . . . It is time that the public, litigants and counsel be disabused of the notion, currently enjoying great favor, that a federal court is the only court in which federally guaranteed rights can or should be enforced.

*See generally* H. Hart, The Relations Between State and Federal Law, 54 Colum.L.Rev. 489, 498 (1954).

The ruling herein, dismissing this suit, is not based upon or any reflection upon the merit of this complaint or the alleged justification for such guidelines and their relation to the statutory command to the Clerk—those have not been considered. While federal courts have accepted the case of a policeman's beard because "choice of personal appearance is an ingredient of an individual's personal liberty, and that any restriction on that right must be justified by a legitimate state interest reasonably related to the regulation", Dwen v. Barry, 483 F. 2d 1126, 1130 (2d Cir. 1973), it does not seem to this Court that the institutional cases, the school and police cases, reach to the extent of federal cognizance of marriage decorum in City halls.

The threshold question here presented and decided is not the merit of the clothes guideline, but whether the federal courts should supervise marriage forms and procedures in City Clerk's offices. A line for acceptable issues must be drawn somewhere. The defendant's is a locally prescribed and directed function in an area fundamentally of state concern. Plaintiffs concede that some decorum is appropriate but draw the line at skirts, an accoutrement of diminishing use for many. *Non constat*, the forms and the degree of decorum at weddings in the City Clerk's office do not sufficiently justify provoking a fed-

eral-state conflict. Federal judges have too much to do to become involved in this type of dispute which is best and most appropriately resolved by the State of New York and the New York City Council to whom the defendant is responsible. This is a class of case where, certainly, "the state tribunals will afford full justice, subject, of course, to Supreme Court review." H. J. Friendly, Federal Jurisdiction: A General View (1973) p. 95.

Complaint dismissed.

So ordered.