Keith **BENSCHOTER**, Marlin Wilson, and **Corktown Pet Supply, Inc.**, a Michigan Corporation, Plaintiffs,

v.

Robert **HARDY**, Ward D. Powers, Phil S. Willis, and **R & W Associates**, a Michigan Partnership, Defendants.

**No. 00–CV–74902.**

United States District Court, E.D. Michigan, Southern Division.

July 10, 2001.

Michael J. Bennane, Bennane Associates, Detroit, MI, for plaintiffs.

James B. Fleming, Fleming & Fleming, Jackson, MI, for defendants.

## OPINION

DUGGAN, District Judge.

On November 7, 2000, Plaintiffs filed suit against Defendants alleging violations of 18 U.S.C. §§ 1962 and 1964 and MICH. COMP. LAWS § 600.2918(2), and other state law claims. This matter is currently before the Court on Defendants' Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6). The Court entertained oral argument on April 12, 2001. For the reasons set forth below, Defendants' Motion to Dismiss shall be granted in part and denied in part.

## Background

Defendant R & W Associates ("R & W") is a Michigan Partnership, whose members are Defendant Robert Hardy and Defendant

Ward D. Powers. On or about March 24, 1999, Plaintiff Corktown Pet Supply, Inc. ("Corktown") entered into a lease agreement with R & W. (*See* Defs.' Mot. to Dismiss, Ex. A). Plaintiffs Keith Benschoter ("Benschoter") and Marlin Wilson ("Wilson") signed this lease agreement as guarantors. (*Id.* at 7). The lease agreement identifies Benschoter as the President of Corktown. (*Id.*). Under the lease agreement Corktown was to rent a building in Jackson, Michigan from April 1, 1999 to March 31, 2000. (*Id.* at 1).

All parties agree that checks issued by Plaintiffs to R & W on the date of signing and on April 1, 1999, were returned due to insufficient funds. However, the parties disagree as to the course of events that occurred from this point on.

Defendants claim R & W demanded payment for late charges and collection fees pursuant to the lease agreement, but Corktown failed to pay. Defendants also claim that Corktown vacated the leased premises in October of 1999. (Defs.' Br. at 2).

Plaintiffs claim that although R & W did ask for late charges and collection fees at the time of the returned checks, the parties later agreed that due to infractions of the lease on the part of R & W, Plaintiffs would not be assessed those charges and fees. Plaintiffs further claim they paid rent within the lease agreement's 10 day grace period for the months of April through September. (Pls.' Resp. Br. at 2). Plaintiffs claim that on or about October 8, 1999, Defendants Hardy and R & W had the locks changed on the leased premises and locked out Plaintiffs. (*Id.*). Plaintiffs further claim that subsequent to the alleged lockout they made arrangements to forward their mail to a new address, but that before the change was effectuated Defendant Hardy refused to turn over mail sent to Corktown at the leased address. (*Id.* at 3). Plaintiffs claim that Defendant Hardy confiscated their mail and turned the "proceeds of that confiscation" over to Defendant Willis.[1] Plaintiffs also claim that Defendant Hardy fraudulently converted their property by selling the remaining inventory owned by Plaintiffs, and informed Plaintiffs he was turning over the proceeds to Defendant Willis. (*See* Second Am. Compl. ¶¶ 22–23).

On December 3, 1999, R & W filed a complaint against all three Plaintiffs in Jackson County District Court alleging that although R & W had performed all of its obligations under the lease, Corktown had abandoned the leased premises and failed and refused to pay rent and other obligations under the lease agreement. (Defs.' Mot. to Dismiss, Ex. B ¶¶ 8 & 10). R & W sought a judgment for unpaid rent, taxes, late fees, and expenses incurred in enforcing the rental agreement. The complaint also alleged that Wilson and Benschoter were individually liable for all obligations of Corktown as guarantors of the lease agreement. (*Id.* ¶ 7). On February 2, 2000, a default judgment against Plaintiffs was entered in the amount of $25,131.20. (Defs.' Mot. to Dismiss, Ex. D).

In April of 2000, Wilson filed a motion to set aside the default judgment. (*See* Defs.' Mot. to Dismiss, Ex. E). Among other things, the motion alleged that Corktown, Benschoter and Wilson had been locked out of the leased premises in October of 1999, and that R & W had breached the terms of the lease agreement by resulting to self-help remedies in the alleged October 1999 lockout. (*Id.* ¶ 6). After "having heard written and oral argument of the parties," the Jackson County District Court denied the motion to set aside the default judgment "for the reasons stated on the record." (Defs.' Mot. to Dismiss, Ex. F).

On November 7, 2000, Plaintiffs filed suit against Defendants in this Court. Plaintiffs' claims include:

1) A claim that Defendants engaged in a conspiracy to defraud the Plaintiffs that involved the use of and confiscation of Plaintiffs' mail in violation of 18 U.S.C. §§ 1962 and 1964;

2) A claim that Defendants breached the lease agreement by locking Plaintiffs out of the leased premises;

Second Am. Compl. ¶ 27).

---

1. Apparently, Plaintiffs had previously borrowed $210,000.00 from Defendant Phil S. Willis. (*See*

3) A claim that Defendants fraudulently converted Plaintiff Tenant's property; and

4) A claim that Defendants interfered with Plaintiffs' possessory interest in the leased premises in violation of MICH. COMP. LAWS § 600.2918(2).

(*See* Compl.). On December 4, 2000, Plaintiffs filed an Amended Complaint that differed from the original complaint only in that it included a jury demand.

## Standard of Review

Defendants' motion to dismiss is brought under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(1) provides for dismissal for lack of jurisdiction over the subject matter, while Rule 12(b)(6) addresses the failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(1) and 12(b)(6). A motion to dismiss may only be granted "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle to him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

## Discussion

Defendants contend that Plaintiffs' complaint must be dismissed on the following grounds: 1) Plaintiffs' First Amended Complaint does not conform to the applicable federal or local rules; 2) this Court lacks subject matter jurisdiction over this case because there is no substantial federal question; 3) Plaintiffs lack standing or are not proper parties in interest; 4) Plaintiffs' claim that Defendants interfered with Plaintiffs' possessory interest in the leased premises in violation of MICH. COMP. LAWS § 600.2918(2) is barred because it was filed beyond the statute's period of limitation; and 5) Plain-

tiffs' claims are barred by the doctrine of res judicata.

## I. *Non–Conforming Complaint*

■ Defendants first seek dismissal of Plaintiffs' complaint because it does not conform with federal and local rules. As Defendants correctly note, Plaintiffs' amended complaint does not conform with FED. R. CIV. P. 10(b) [2] and Rule 5.1(a) [3] of the Local Rules for the Eastern District of Michigan because the averments of Plaintiffs' claim are not in numbered paragraphs and because the pages of the complaint are not numbered. Defendants assert that Plaintiffs' failure to conform with the federal and local rules has unduly burdened the Defendants in their efforts to accurately answer the Plaintiffs' allegations.

Noting that E.D. MICH. L.R. 11.1 provides that "[i]f after notice and a reasonable opportunity to respond, the Court determines that a provision of these Local Rules has been knowingly violated, the Court may impose an appropriate sanction," Defendants apparently request the Court to dismiss Plaintiffs' First Amended Complaint as a sanction for its non-conformance. However, the Court does not believe that Plaintiffs' failure to comply with the rather technical rules at issue here warrants the extreme sanction of dismissal of Plaintiffs' complaint.[4]

## II. *No Substantial Federal Question*

■ Both parties agree that there is no diversity of citizenship in this case. However, the parties disagree as to whether or not Plaintiffs have presented a federal question.

Plaintiffs contend they have alleged federal claims under 18 U.S.C.A. §§ 1962 & 1964.[5] (Pls.' Resp. Br. at 5 & 7).

---

**2.** Rule 10(b) provides that "[a]ll averment of claim or defense shall be made in numbered paragraphs." FED. R. CIV. P. 10(b).

**3.** Rule 5.1(a) provides that all papers filed with the court must have the pages numbered consecutively. E.D. MICH L.R. 5.1(a).

**4.** Plaintiffs, who admit that their "First Amended Complaint" was not in compliance with the above rules, filed a motion to amend their complaint on March 30, 2001, which this Court

granted. Plaintiff's Second Amended Complaint is in compliance with the above rules.

**5.** Although it is not mentioned in their complaint, in their Response, Plaintiffs also contend that they "have a direct claim under federal law that being 18 U.S.C.A. § 1708." (Pls.' Resp. Br. at 5). The Court notes that 18 U.S.C. § 1708 is a criminal statute pertaining to the theft or receipt of stolen mail. However, by its terms, the statute does not provide for civil remedies. Therefore, Plaintiffs cannot bring a civil action against Defendants under 18 U.S.C. § 1708.

Defendants recognize that "Plaintiffs have alleged in their Complaint that the Defendants were part of a conspiracy 'to defraud the Plaintiffs that involved the use of and confiscation of Plaintiff's U.S. Mail in violation of 18 U.S.C.A. § 1962.'" (Defs.' Br. at 5). Although Defendants recognize that Plaintiffs have alleged this federal question, they contend this case does not involve a "substantial question of federal law."

"To give a federal court jurisdiction, a federal question must of course, be substantial." *Garvin v. Rosenau*, 455 F.2d 233 (6th Cir.1972) (citing *Cuyahoga River Power Co. v. Northern Ohio Traction & Light Co.*, 252 U.S. 388, 40 S.Ct. 404, 64 L.Ed. 626 (1920)). "[A] substantial federal question is presented as long as the pleadings invoking federal question jurisdiction are not 'so attenuated and unsubstantial as to be absolutely devoid of merit,' 'wholly unsubstantial,' 'obviously frivolous,' 'plainly unsubstantial,' or 'no longer open to discussion.'" *In re Bendectin Litigation*, 857 F.2d 290, 300 (6th Cir.1988) (citations omitted). The Sixth Circuit has indicated that this standard is "easily met" and that even "an arguably plausible claim must be allowed to proceed." *Id.*

Defendants claim that Plaintiffs have pled "but do not substantiate, a violation of 18 U.S.C.A. § 1962 as ruse to bring this matter to Federal Court." (Defs.' Mot. to Dismiss at 3–4). Defendants contend Plaintiffs have failed to state with particularity any facts which would support this "frivolous" allegation. (Defs.' Br. at 6). Apparently, Defendants contend that Plaintiffs' RICO claim is "obviously frivolous" and therefore does not present a substantial federal question providing this Court with jurisdiction over the case. However, Defendants do not discuss why Plaintiffs' RICO claim is "obviously frivolous." As such, the Court is not satisfied that this complaint should be dismissed for lack of a substantial federal question.

### III. *Standing / Proper Parties in Interest*

Defendants also contend that Plaintiffs' complaint must be dismissed because Plaintiffs lack standing or are not proper parties in interest.

### A. *Corktown*

Defendants acknowledge that Corktown has standing to bring this suit, but argue that Corktown is not authorized to bring this suit. Defendants state that Defendant Willis is the majority shareholder of Corktown. (*See* Willis Aff.). Defendants then contend that because this lawsuit has not been approved by the majority shareholder, Corktown does not have corporate authorization to file this suit. However, Defendants have cited no authority to support this position.

### B. *Benschoter & Wilson*

Defendants contend that the "gist of the Plaintiffs' complaint rests on the theory that the Defendants breached a contractual lease between the parties." (Defs.' Mot. to Dismiss at 7). Defendants argue that "[s]ince the Plaintiffs Wilson and Benschoter were not parties to the lease at issue, they have no interests to protect or pursue." (*Id.*). Therefore, Defendants contend that Wilson and Benschoter lack standing because they have alleged no injury in fact.

As Defendants correctly note, the standing doctrine limits the judicial power of the federal courts to parties who demonstrate an "injury in fact." *Allstate Ins. Co. v. Wayne County*, 760 F.2d 689, 692 (6th Cir. 1985). There are three components of this "injury in fact" requirement: 1) a party must show that he personally has suffered some actual or threatened injury as a result of the alleged conduct of the defendant; 2) a party must show that the injury can fairly be traced to the challenged conduct of the defendant; and 3) the alleged injury is likely to be redressed by a favorable decision. *Id.*

"A plaintiff bears the burden of demonstrating standing." *Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir.1999). In response to Defendants' argument that Benschoter and Wilson lack standing because they have alleged no injury in fact, Plaintiffs simply state, without explanation, that "Plaintiffs have standing under the lease that was made between R & W and

Corktown." (Pls.' Resp. Br. at 6).[6] Accordingly, Plaintiffs have failed to meet their burden of demonstrating that Benschoter and Wilson have standing to bring this action.

## IV. *Statute's Period of Limitation*

Defendants also contend that Plaintiffs' claim that Defendants interfered with their possessory interest in the leased premises in violation of MICH. COMP. LAWS § 600.2918(2) is barred because the claim was filed beyond the statute's period of limitation. The Court agrees. The statute at issue, MICH. COMP. LAWS § 600.2918, provides that "[a]n action for damages under this section shall be commenced within 1 year from the time the cause of action arises or becomes known to the plaintiff." Plaintiffs allege they were locked out on or about October 8, 1999. However, they did not commence this action until December 4, 2000. Therefore, Plaintiffs' claim under MICH. COMP. LAWS § 600.2918 was filed beyond the statute's period of limitation.

## V. *Res Judicata*

■ Under the Full Faith and Credit Act, a decision by a court of the State of Michigan has the same preclusive effect in this Court as that decision would have in a Michigan court. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). The doctrine of res judicata bars a subsequent action between the same parties when the evidence or essential facts are identical. *Sewell v. Clean Cut Mgmt.*, 463 Mich. 569, 575, 621 N.W.2d 222 (2001).

Defendants contend that issues surrounding the leased premises have already been adjudicated in Jackson County District Court and cannot be relitigated by Plaintiffs in this Court. Thus, Defendants assert that Plaintiff's remaining claims are barred by the doctrine of res judicata. However, the doctrine only applies when "the facts or the

evidence essential to the maintenance of the two actions are identical." *Mango v. Plymouth Township Bd. of Trustees*, 33 Mich.App. 715, 718, 190 N.W.2d 285 (1971). If the evidence or essential facts are identical, then a "second action is barred when: 1) the first action was decided on the merits, 2) the matter contested in the second action was or could have been resolved in the first, and 3) both actions involve the same parties or their privies." *Sewell*, 463 Mich. at 575, 621 N.W.2d 222.

The prior proceeding in this case was R & W's action against Plaintiffs for non-payment of rent. In this action, Plaintiffs have alleged four claims: 1) that Defendants engaged in a conspiracy to defraud the Plaintiffs that involved the use of and confiscation of Plaintiffs' mail in violation of 18 U.S.C. §§ 1962 and 1964; 2) that Defendants breached the lease agreement; 3) that Defendants fraudulently converted Plaintiff Tenant's property; and 4) that Defendants interfered with Plaintiffs' possessory interest in the leased premises in violation of MICH. COMP. LAWS § 600.2918(2). However, as stated supra, Plaintiffs' claim under MICH. COMP. LAWS § 600.2918(2) is barred. Accordingly, the Court will only consider the application of the doctrine of res judicata to the three remaining claims.

■ Applying the above test to this case, it is clear that the facts and evidence necessary to establish the claim in the prior proceeding, the non-payment of rent action, are different from those necessary to establish two of Plaintiffs' current claims in this action. The Court is satisfied that the non-payment of rent case did not involve facts or evidence essential to Plaintiffs' claim that the Defendants engaged in a conspiracy to defraud Plaintiffs by confiscating their mail, or to Plaintiffs' claim that the Defendants fraudulently converted Plaintiff's property (inventory) from the leased premises. Neither Plaintiffs' mail nor Plaintiffs' inventory were involved in the prior proceeding.

---

**6.** However, it is undisputed that the tenant under the lease was Corktown Pet Supply, Inc. (*See* Ex. 1 attached to Pls.' Mot. to Am. Compl.) In addition, there is no claim that the inventory allegedly converted belonged to anyone other than the tenant. Furthermore, Plaintiff Benschoter states that "Hardy intercepted the mail of Corktown Pet Supply Inc." (*See* Benschoter Aff. attached as Ex. 3 to Pls.' Mot. to Am. Compl.).

■ However, the prior proceeding did involve the question of whether R & W had fulfilled its obligations under the lease. In the non-payment of rent claim, R & W specifically alleged: 1) that it had performed of all of its obligations under the lease agreement, 2) that Corktown had abandoned the leased premises, and 3) that Plaintiffs had not performed its obligations under the lease and owed R & W approximately $25,000 in unpaid rent, taxes and expenses. The Court is therefore satisfied that the non-payment of rent action and Plaintiff's claim that R & W breached the lease agreement involve the same evidence or essential facts.

The Court is also satisfied that the first action was decided on the merits, that the matter contested in the second action was or could have been resolved in the first, and that both actions involve the same parties or their privies. First, there was a prior decision on the merits. Plaintiffs do not dispute that Defendants received a default judgment against Plaintiffs in the Jackson County District Court. "A judgment is considered to be a determination on the merits, and thereby triggers the doctrine of res judicata upon relitigation, even if the action was resolved by summary or default judgment." *Detroit v. Nortown Theatre, Inc.,* 116 Mich.App. 386, 392, 323 N.W.2d 411 (1982).

Second, the matter contested in the second action must have been resolved or could have been resolved in the first action. As recently explained by the Michigan Supreme Court in *Sewell,* "Michigan courts have broadly applied the doctrine of res judicata. They have barred, not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Sewell,* 463 Mich. at 575, 621 N.W.2d 222. In the prior action, the issue of whether R & W breached the lease agreement by locking Plaintiffs out was or could have been resolved. It appears that this claim was raised and may have been considered·in the prior action, as the claim was included in the motion to set aside the default judgment. Fur-

thermore, even if this claim was not considered by the court in the prior litigation, the claim is still barred because it could have been litigated in the initial action.[7]

The final element that must be satisfied is that both actions involve the same parties or their privies. In the prior action, R & W brought suit against Corktown, Benschoter and Wilson. Plaintiff's current claim in this action involves those same parties.

Accordingly, Plaintiffs' claim that R & W breached the lease agreement is barred by the doctrine of res judicata.

### Conclusion

For the reasons set forth above, Defendants' motion to dismiss shall be granted in part, and denied in part.

As Plaintiffs Benschoter and Wilson have not established that they have standing to bring this action, they shall be dismissed from this action. In addition, the claim asserted under MICH. COMP. LAWS § 600.2918 shall be dismissed, as the claim was not filed within the statute's period of limitations. The claim that Defendant R & W breached the lease agreement shall also be dismissed, as it is barred under the doctrine of Res Judicata.

Defendants' motion to dismiss shall be denied in all other respects. Therefore, the only claims that remain in this action are Plaintiff Corktown's RICO claim and fraudulent conversion of property claim.

An Order consistent with this Opinion shall issue forthwith.

---

7. Not only could Plaintiffs' claim that R & W breached the lease by locking them out have been raised in the prior proceeding, but as a defense to R & W's breach of contract action, it must have been raised in the earlier proceeding or is waived. *See Sprague v. Buhagiar,* 213 Mich. App. 310, 313, 539 N.W.2d 587 (1995) (citing M.C.R. 2.111(F)(2) and (F)(3)(a)).